**CITY OF OREM, Plaintiff and Appellee,**

v.

**Kari HENRIE, Defendant and Appellant.**

No. 930411–CA.

Court of Appeals of Utah.

Feb. 4, 1994.

---

Michael J. Petro (argued), Young & Kester, Springville, for appellant.

Edward A. Berkovich (argued), Orem City Prosecutor, Orem, for appellee.

Before BILLINGS, DAVIS and JACKSON, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendant/appellant Kari Henrie appeals her convictions for leaving the scene of an accident, in violation of Utah Code Ann. § 41–6–30 (1993), and driving under the influence of alcohol, in violation of Utah Code Ann. § 41–6–44 (1993).[1] She claims the trial court erred in denying her motion to suppress evidence gathered at her home. We affirm.

## FACTS

At approximately 6:00 p.m. on January 1, 1993, a two-car accident occurred in Orem, Utah. One of the cars, a full-size, older-model, brown Buick, was observed leaving the scene of the accident. An officer dispatched to the scene obtained a description of the car, including the license plate number, and radioed a request for other units to search for the missing automobile. At approximately 6:15 p.m., Officer Steele located a car matching the description at a fourplex apartment near the scene of the accident. The car had front-end damage consistent with the accident. In addition, it was parked at an extreme angle, and the door on the driver's side was ajar. A strong odor of alcohol emanated from the car.

Officer Steele attempted to locate the owner of the car. As he approached the fourplex, he noticed that "the door on the bottom left [apartment] that had the lights out was closing slowly." He then went upstairs to an illuminated apartment, where he learned from its occupant that defendant owned the car and lived in the darkened apartment where he had seen the door closing. He knocked several times on the outer screen door of defendant's apartment but received no response. As he was turning away from the door, Officer Steele found defendant's purse on the stairs.

Officer Steele was then joined by Officer Jackson, and together they returned to defendant's front door. Officer Jackson reached through a hole in the screen and knocked hard on the inner wooden door, hoping to elicit a response. Instead, the door swung open one to two feet, and the officers observed keys in the doorknob. Both officers testified they had not previously noticed that the door was ajar or that the keys were in the doorknob.

At this point, the testimony of the officers varies. Officer Steele testified that he shined his flashlight into the apartment when the door swung open. However, on cross-examination he admitted that he might have first pushed the door open further. Officer Jackson testified that Officer Steele pushed the door open further and then shined his flashlight into the darkened apartment.[2]

The officers noticed defendant on her bed in the rear of the apartment. Officer Steele called out "Kari" and defendant stood up and said, "Yes." He asked if they could talk to

---

1. The City of Orem has adopted both of these sections, which can be found at section 19–1–1 of the Orem City Code.

2. This variance is ultimately irrelevant in light of the City's concession, discussed below, that a search occurred when Officer Steele shined his flashlight into defendant's apartment.

her. She said "okay" and approached them, staggering as she walked. The officers opened the screen door and entered one to three feet into the apartment. All three then went outside, where the officers described the car accident to defendant and administered field sobriety tests to her. A third officer joined them and observed the administration of the tests; he then took defendant to the police station, advised her of her *Miranda* rights, and attempted to administer an intoxilyzer test. After three unsuccessful attempts, defendant's inability to complete the test was recorded as a refusal.

Defendant was charged with driving under the influence of alcohol and leaving the scene of an accident. She moved to suppress all evidence obtained as a result of the warrantless entry into her home.[3] The trial court denied the motion, and the case then proceeded to a bench trial, where defendant was found guilty on both counts. The trial court sentenced her to the statutory maximum for each offense. Subsequently, the court granted a certificate of probable cause and stayed imposition of defendant's sentence pending appeal to this court.

Defendant appeals from her convictions, claiming the trial court erred in denying her motion to suppress because an unlawful search occurred when the police entered her home without a warrant and without exigent circumstances to support the entry. The City responds that there was no search, that defendant consented to the officers' entry into her home, and that even if a search occurred, it was justified by exigent circumstances. We address in detail only the issue of exigent circumstances as we affirm on that basis.

## STANDARD OF REVIEW

This court previously characterized the determination of exigent circumstances as a

question of fact, "which should not be disturbed on appeal unless clearly erroneous." *State v. Morck*, 821 P.2d 1190, 1194 (Utah App.1991). However, in *State v. Thurman*, 846 P.2d 1256 (Utah 1993), the supreme court undertook a rigorous analysis of the standard of review applicable to determinations of voluntariness of consent and attenuation. *Id.* at 1262–72. The court adopted a bifurcated standard for both determinations, concluding that the "ultimate conclusion that a consent was voluntary or involuntary is to be reviewed for correctness ... [and the] underlying factual findings will not be set aside unless they are found to be clearly erroneous." *Id.* at 1271 (citation omitted). That standard also applies to determinations of exploitation and attenuation. *Id.* at 1271–72.

Since *Thurman*, we have applied the bifurcated approach to a determination of exigent circumstances. *State v. Beavers*, 859 P.2d 9, 12 (Utah App.1993). In *Beavers*, because the underlying facts were undisputed, we employed the second prong of *Thurman*, applying a nondeferential correction of error standard to "the [trial] court's application of Fourth Amendment principles to the undisputed facts of [that] case." *Id.*[4]

In the instant case, the facts relevant to the exigent circumstances determination are undisputed. We thus review for correctness the trial court's conclusion that exigent circumstances justified the warrantless search.

## I. EXISTENCE OF SEARCH

As a threshold matter, the City argues that no search occurred. Our review of the record, however, reveals that at the suppression hearing, the City expressly conceded that a search occurred. The following colloquy illustrates this concession:

---

3. At oral argument, counsel for defendant clarified that "all evidence" means everything obtained as a result of the search of defendant's home and person, including the officers' observations, field sobriety tests, intoxilyzer refusal, and statements defendant made to the police.

4. We also applied a correction of error standard in *State v. Shoulderblade*, 858 P.2d 1049, 1051

(Utah App.1993) (following *Thurman* in applying bifurcated standard to attenuation analysis). Other states have adopted this approach, treating the ultimate conclusion of whether undisputed facts constitute exigent circumstances as a matter of law. *See, e.g., State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

THE COURT: And shining the light was a search? ·

MR. PETRO [counsel for defendant]: Yes.

THE COURT: Do you disagree?

MR. STEPHENS [counsel for the City]: We'd at least concede that shining the light would be a search....

THE COURT: So we're not going to be asked to define if that was a search? The parties agree that it was.

Based upon this concession, the trial court proceeded to consider the issues of probable cause and exigent circumstances.

The City cannot on appeal circumvent its earlier concession. "[A]n appellate court normally will not consider issues, even constitutional ones, that have not been presented first to the trial court for its consideration and resolution." *State v. Webb*, 790 P.2d 65, 71 n. 2 (Utah App.1990), *aff'd sub nom. Webb v. Van Der Veur*, 853 P.2d 898 (Utah App. 1993), *cert. denied*, 860 P.2d 943 (Utah 1993); *accord Ong Int'l Inc. v. 11th Ave. Corp.*, 850 P.2d 447 (Utah 1993) (declining to address issues on appeal that trial court should have addressed first); *Stillinovich v. Ottilia Villa, Inc.*, 14 Utah 2d 222, 381 P.2d 210 (1963) (binding parties to concession, upon which trial court relied, that suit was a class action).

In the instant case, the trial court relied upon the concession that a search occurred when the officer shined his flashlight into defendant's apartment. Thus the court had no occasion to consider the issue. Accordingly, we will not treat this issue for the first time on appeal. *State v. Rangel*, 866 P.2d 607, ——, 229 Utah Adv.Rep. 51, 53 (Utah App.1993). We now consider whether the warrantless search was proper.[5]

## II. PROPRIETY OF WARRANTLESS SEARCH

### A. Utah Constitution

Defendant argues that the warrantless search violated both the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution. In her brief, she highlights the recent trend among state courts grounding their search and seizure analyses on state constitutional provisions, which may afford greater protections than their federal counterpart. *See, e.g., State v. Larocco*, 794 P.2d 460, 465 (Utah 1990) (plurality opinion). Defendant, however, engages in no analysis as to why our examination of exigent circumstances under Article I, Section 14 should be different from traditional Fourth Amendment treatment of the issue. We refuse to provide the independent analysis defendant has failed to submit. *See, e.g., State v. Brown*, 853 P.2d 851, 854 n. 1 (Utah 1992); *State v. Webb*, 790 P.2d 65, 71 n. 2 (Utah App.1990), *aff'd sub nom. Webb v. Van Der Veur*, 853 P.2d 898 (Utah App.1993), *cert. denied*, 860 P.2d 943 (Utah 1993). Therefore, we consider her claim only under the Fourth Amendment.

### B. Fourth Amendment

Under the Fourth Amendment, we employ a strong preference in favor of warrants, particularly when a person's residence is involved. Indeed, " 'physical entry of the home is the chief evil against which the ... Fourth Amendment is directed.' " *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). As such, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* 466 U.S. at 749, 104 S.Ct. at 2097 (citing *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)); *accord State v. Christensen*, 676 P.2d 408, 411 (Utah 1984); *State v. Beavers*, 859 P.2d 9, 13 (Utah App.1993).

■ However, the presumption against warrantless searches is not without its excep-

---

5. The City also argues for the first time on appeal that defendant consented to the search. However, the City conceded that a search occurred when the officer shined his flashlight into defendant's apartment, which took place *prior to* defendant's alleged consent. Therefore, we need not reach the issue of consent because defendant undeniably did not consent to the flashlight search. Furthermore, the City does not claim, assuming the original search was unlawful, that the evidence subsequently obtained by a consent search was sufficiently attenuated to purge the taint of the allegedly illegal search. *See State v. Arroyo*, 796 P.2d 684, 690 (Utah 1990).

tions, which are "'jealously and carefully drawn.'" *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987) (quoting *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958)). Where probable cause and exigent circumstances are proven, a warrantless search of a home is permissible. *Id.* 745 P.2d at 1258–59. In the instant case, the City bears the burden of showing both probable cause and exigent circumstances, and "because entry into a home [is] involved, that burden is particularly heavy." *State v. Ramirez*, 814 P.2d 1131, 1133 (Utah App.1991). On appeal, defendant does not assert that the police lacked probable cause to enter her home.[6] We thus focus our attention on exigent circumstances.

### C. Exigent Circumstances

This court has defined exigent circumstances [7] as those "'that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *State v. Beavers*, 859 P.2d 9, 18 (Utah App. 1993) (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). The determination of exigency is based on the totality of the circumstances. "[E]xigency does not evolve from one individual fact. Instead, there is often a mosaic of evidence, no single part of which is itself

sufficient. Our task is to review the totality of facts and circumstances of the particular case to determine if the finding of exigency was proper." *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987).

At the suppression hearing, the City argued that two exigent circumstances existed: the potential destruction of blood alcohol evidence and safety. The trial court found the latter basis lacking and therefore grounded its conclusion of exigency solely upon the possible loss of evidence. Accepting the trial court's determination, the City advances on appeal only the destruction of evidence branch of exigent circumstances. Thus, we consider only whether the possible destruction of evidence of defendant's alcohol content under the facts and circumstances presented was an exigent circumstance justifying this warrantless home search.

This court has recognized that the possible destruction of blood alcohol evidence can constitute an exigent circumstance. *In re I., R.L.*, 739 P.2d 1123, 1128 (Utah App.1987), *rev'd on other grounds*, 771 P.2d 1068 (Utah 1989). The rationale behind allowing a warrantless search to obtain such evidence is "that the blood alcohol evidence dissipates over time, creating an exigent circumstance which justifies a warrantless search." *Id.* However, in *In re I., R.L.* the court did not undertake an in-depth analysis of blood alcohol content as an exigent circumstance because it was not central to the holding. We do so now.

Both federal and state courts have considered whether the possible destruction of

---

**6.** At the hearing on the motion to suppress, although defense counsel initially challenged the finding of probable cause, he ultimately conceded its existence. Specifically, the following exchange occurred:

> THE COURT: Doesn't that seem probable that the driver of that vehicle involved in that accident was secreting themself in that apartment? Isn't that a straightforward conclusion?
> MR. PETRO [counsel for defendant]: I'd say that's a straightforward conclusion.
> THE COURT: So that limits itself to if there are exigent circumstances which allow an entry without a warrant?
> MR. PETRO: Correct.

**7.** The trial court made no written factual findings supporting its conclusion that exigent circum-

stances existed. Normally, when factual issues are involved in deciding a motion to suppress, trial courts are required to make detailed findings sufficient to enable appellate courts to adequately review the trial court's decision. *State v. Marshall*, 791 P.2d 880, 882 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990). However, in the instant case, the facts relevant to exigent circumstances are not in dispute. As such, we need not remand for the entry of factual findings. *See State v. Robinson*, 797 P.2d 431, 437 (Utah App.1990) (declining to remand where relevant facts were undisputed and record provided for meaningful review).

blood alcohol evidence is an exigent circumstance. Most have concluded that it may constitute an exigent circumstance under the facts of a particular case. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that given the special facts of the case, "the attempt to secure evidence of blood-alcohol content ... was an appropriate incident to [the defendant's] arrest." *Id.* at 771, 86 S.Ct. at 1836. The Court recognized that time is of the essence in obtaining evidence of intoxication, because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops." *Id.* at 770, 86 S.Ct. at 1836. Various state and federal courts have agreed that the possible destruction of blood alcohol evidence may constitute an exigent circumstance under certain facts. *See, e.g., United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991); *State v. Storvick*, 428 N.W.2d 55, 60 (Minn.1988); *State v. Ellinger*, 223 Mont. 349, 725 P.2d 1201, 1205 (1986); *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271, 275 *cert. denied*, 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987); *State v. Milligan*, 304 Or. 659, 748 P.2d 130, 136 (1988).

However, where investigations of alcohol-related offenses involve a search or arrest in a defendant's home, courts have been more reluctant to find exigent circumstances, particularly if the alcohol-related offense is minor. The Supreme Court considered this situation in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The defendant in *Welsh* was observed driving his car erratically, eventually swerving off the road but causing no injury or damage. He left his car and walked away. The driver who had observed him told the police that the defendant looked either very drunk or very ill. The police went to the defendant's house, entered without a warrant, and arrested him.

A key factor in the *Welsh* Court's analysis was the fact that Wisconsin characterized driving under the influence as a "noncriminal, civil forfeiture offense for which no imprisonment [was] possible." *Id.* at 754, 104 S.Ct. at 2100. The Court reasoned:

Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750, 104 S.Ct. at 2098 (citation and footnote omitted). On that basis, the Court reversed the Wisconsin Supreme Court and refused to uphold the warrantless arrest. *Id.* at 754, 104 S.Ct. at 2100. However, the Court cautioned that the gravity of the offense is "an important," but not the sole, factor. *Id.* at 753, 104 S.Ct. at 2099. The Court also emphasized it did not mean to suggest that preventing drunk driving "is not properly of major concern to the States," and it reasoned that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest." *Id.* at 754 n. 14, 104 S.Ct. at 2100 n. 14.

Following *Welsh*, the Eighth Circuit Court of Appeals declined to recognize the need to preserve evidence of blood alcohol level as sufficiently exigent to justify a warrantless home arrest. *Patzner v. Burkett*, 779 F.2d 1363, 1368 (8th Cir.1985). The defendant in *Patzner*, who had been drinking beer, struck another car while driving home and informed the other driver that he would be at his home if she decided to call the police. The other driver did so and informed the officers that the defendant appeared intoxicated. The officers then went to the defendant's home. A guest informed the police that the defendant was inside in the kitchen. The police entered the house, walked into the kitchen, and arrested him. Because he was uncooperative, the officers dragged and carried the defendant, a double amputee, to their squad car. The defendant was ultimately charged with driving under the influence, a misdemeanor.

He moved to suppress the evidence obtained on the basis that his arrest was unconstitutional. The trial court agreed, concluding that the state had not proven either exigent circumstances or consent. *Id.* at 1365–66.

The defendant in *Patzner* then brought a civil rights action under 42 U.S.C. § 1983. The Eighth Circuit agreed that the warrantless home arrest was not supported by exigent circumstances. *Id.* at 1368. Relying on *Welsh*, the court reasoned that Patzner's case was

> factually indistinguishable from *Welsh* except that ... North Dakota classified this offense as a misdemeanor with a minimum sentence of a one hundred dollar fine or three days in jail.... [T]his difference in penalty suggests a stronger state interest in effecting the arrest than the Wisconsin legislature expressed by punishing the same conduct with only civil sanctions. In our view, the minor difference in penalty is not sufficient to support a result different from that reached in *Welsh*.

*Id.* 779 F.2d at 1368–69.

This court has considered the gravity of the offense in a slightly different context: whether a warrantless home search may be justified by the exigent circumstance of hot pursuit when the underlying offense is a misdemeanor. *State v. Ramirez*, 814 P.2d 1131 (Utah App.1991). In *Ramirez*, we con-

cluded that the hot pursuit of a fleeing misdemeanant sufficed to permit a warrantless in-home arrest under the Fourth Amendment. *Id.* at 1134–35. The defendant in *Ramirez* asserted that under *Welsh*, warrantless entries under the hot pursuit exception were permissible only in felony cases. *Id.* at 1134. We disagreed.[8]

Several of our sister states have considered whether the destruction of blood alcohol evidence may constitute an exigent circumstance sufficient to justify a warrantless arrest or search at the defendant's home.[9] For example, the Minnesota Supreme Court concluded that officers acted appropriately in entering a home without a warrant in part because "they needed to act as quickly as possible to precisely ascertain defendant's blood alcohol level before the evidence dissipated." *State v. Storvick*, 428 N.W.2d 55, 60 (Minn.1988). The defendant in *Storvick* fled the scene of an accident that had resulted in one death and led to a felony conviction. The investigating officers arrived at his home two and one-half hours after the accident and entered when he failed to respond to their knock. *Id.*

Among the factors the *Storvick* court found persuasive in its exigent circumstances determination were: The officers had probable cause to believe a felony had been committed; the investigation began "immediately

---

8. Similarly, some courts have upheld warrantless misdemeanor arrests on a defendant's property, without entry into a residence, based on the exigent circumstance of the destruction of blood alcohol evidence. *See State v. Ellinger*, 223 Mont. 349, 725 P.2d 1201, 1205 (1986) (upholding warrantless arrest of suspected drunk driver in driveway outside his home when offense was criminal, noting that "[a]lthough the *Welsh* court found no need to make a warrantless arrest to preserve evanescent evidence in a *civil* case, this Court has held that the police may seize any evidence which is likely to disappear before a warrant can be obtained, such as a blood sample containing alcohol."); *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 *cert. denied*, 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987) (concluding exigent circumstances justified entry onto defendant's property and arrest of defendant in his car while on premises for misdemeanor offense punishable by fine, imprisonment, and license revocation).

9. Defendant mistakenly relies upon two cases that she claims reach the same result as *Welsh*. First, she cites *State v. Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), which did not involve the destruction of evidence theory. *Id.* 610 A.2d at 1229 n. 10. Instead, the court analyzed the defendant's claim under the emergency doctrine, a separate doctrine not at issue in this case. *Id.* at 1234–37. Likewise, in *People v. Krueger*, 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717, *appeal denied*, 141 Ill.App.2d 552, 162 Ill.Dec. 500, 580 N.E.2d 126 (Ill.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1293, 117 L.Ed.2d 516 (1992), the Illinois Appellate Court rejected the destruction of evidence claim, not because it could not constitute a valid exigent circumstance, but because the officers in that case lacked the requisite probable cause when they made the warrantless search. *Id.* 153 Ill.Dec. at 766–67, 567 N.E.2d at 724–25.

·after the accident, and was an ongoing and continuing field investigation up to the point of arrest"; the police officers were cautious, were prudent, and conducted a "model investigation"; the officers had reason to believe that the defendant was inside the house, although he did not respond to knocking; the defendant had fled the scene of the accident; and the officers had an objective basis for believing the defendant was drinking and for acting promptly to obtain evidence of that drinking before it disappeared. *Id.* at 59–60.

The West Virginia Supreme Court of Appeals has also addressed this issue. In *Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465 (1987), the court was faced with a defendant who, when asked to leave a local bar because of extreme intoxication, assaulted the proprietor and damaged property. The defendant then called the police and asked them to meet him at his residence. When the police arrived, the defendant was not there. As they were leaving, the defendant drove past them. He pulled into his driveway and ran around to the back of the house. The police searched for him for an hour and eventually decided to go inside after seeing a person enter the home, where they found the defendant hiding under the bed. The defendant brought a section 1983 action and later appealed from an adverse ruling. *Id.* at 466.

The *Bennett* court recognized the need to obtain blood alcohol evidence "as soon as [the defendant] could be apprehended, so that he could not metabolize the evidence of his crime." *Id.* at 469. The court noted its concern that the defendant, in eluding the police for an hour, might have metabolized a great deal of alcohol through the exertion or might have ingested more alcohol in his home, supporting a later claim that the post-offense consumption of alcohol caused the chemical test result. *Id.* Moreover, in distinguishing the case from *Welsh,* the court focused on two factors: that a continuous investigation was in progress, and that the offense of driving while intoxicated, a misdemeanor, "imposed upon first offenders a *mandatory* term of imprisonment, and exposed first time drunk drivers to up to six months in jail." *Id.* at 470.

Professor LaFave, in discussing blood alcohol preservation cases, has emphasized the distinction between "planned" arrests and those made in the course of an ongoing field investigation. 2 Wayne R. LaFave, *Search and Seizure* § 6.1(f), at 600 (2d ed. 1987). The Connecticut Supreme Court stressed LaFave's analysis in *State v. Guertin,* 190 Conn. 440, 461 A.2d 963 (1983). Describing LaFave's approach, the court explained:

> [LaFave] defines a "planned" arrest as "one which is made after a criminal investigation has been fully completed at another location and the police make a deliberate decision to go to a certain place, either the arrestee's home or some other premises where he [or she] is believed to be, in order to take him [or her] into custody." In the "planned" arrest situation he suggests that any claimed exigent circumstances which may arise thereafter are foreseeable and therefore would not justify a warrantless entry unless the exigent circumstances are present before the police go into the field to make the arrest. On the other hand, he would not fault the police for not having an arrest warrant when the occasion for an arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the arrest.

*Id.* at 969. Applying LaFave's distinction, the *Guertin* court concluded that while the facts arguably presented a planned arrest, because there was no evidence that the police created the later emergency, their belief that the suspect might flee unless they moved quickly was reasonable. *Id.* at 969–70.

Courts have emphasized that the analysis requires an objective determination; that is, "[w]hile 'exigent circumstances' have multiple characteristics, the guiding principle is reasonableness, and each case must be examined in the light of facts known to officers at the time they acted." *State v. Hert,* 220 Neb. 447, 370 N.W.2d 166, 170 (1985); *accord State v. Page,* 277 N.W.2d 112, 118 (N.D. 1979); *State v. Canby,* 162 W.Va. 666, 252 S.E.2d 164, 167 (1979).

▉ Taken together, these cases suggest a fluid totality of the circumstances approach

to exigency as previously adopted in Utah. *Ashe*, 745 P.2d at 1258. Relevant facts may include the distance to the nearest magistrate, the availability of a telephonic warrant, the feasibility of a stake-out or other form of surveillance while a warrant is being obtained, the seriousness of the underlying alcohol-related offense, the commission of another offense such as fleeing the scene, the ongoing and continuing nature of an investigation, the extent of probable cause, and the conduct of the investigating officers.

We begin our analysis of the case at bar with the gravity of the offense factor central to the *Welsh* holding. Defendant advances the theory that the offenses for which she was convicted are "minor" and thus that the warrantless entry into her home was per se unreasonable. In Utah, driving under the influence of alcohol is a misdemeanor punishable by imprisonment and a monetary fine. Utah Code Ann. § 41–6–44 (1993). Those punishments increase with each successive conviction. *Id.* A fourth or subsequent conviction is treated as a third degree felony. *Id.* § 41-6-44(7)(a). In contrast, the Wisconsin statutory scheme at issue in *Welsh* provided that a first offense was "a noncriminal violation subject to a civil forfeiture proceeding for a maximum fine of $200; a second or subsequent offense in the previous five years was a potential misdemeanor that could be punished by imprisonment for up to one year and a maximum fine of $500." *Welsh,* 466 U.S. at 746, 104 S.Ct. at 2095.

This marked difference in statutory penalties and classifications signifies the divergent views of the Utah and Wisconsin legislatures regarding the severity of the drunk driving offense. We are thus persuaded that *Welsh* is not dispositive because the Utah legislature has classified the offense as criminal and has imposed more punitive penalties.

We now consider the other factors that courts have found relevant to this determination. Nothing in the record indicates any basis for the officers to fear for their own safety. Probable cause was conceded; nonetheless, heeding the warning that more than

minimal probable cause is required, *see Dorman v. United States,* 435 F.2d 385, 392–93 (D.C.Cir.1970), we find the following facts pertinent. Upon locating the vehicle involved in the accident, the investigating officer found it parked at an extreme angle, with the door ajar, damage consistent with the accident being investigated, and a strong smell of alcohol emanating from the open door. Furthermore, he found defendant's purse lying on the stairs outside her apartment and, upon knocking at her front door, discovered that it was ajar and that the keys were in the knob. Moreover, a second offense had been committed—defendant had fled the scene of the accident. Finally, the accident occurred on New Year's Day, a holiday known for the consumption of alcohol. Together these facts suggest more than minimal probable cause.

The officers had a reasonable belief that defendant was in the premises entered. Officer Steele testified he identified defendant as the owner of the car, learned the location of her apartment from a neighbor, discovered her purse on the stairs immediately outside the apartment, and observed the door to the apartment slowly closing as if someone had just entered. Furthermore, there is no suggestion that the officers acted in anything other than a reasonable and peaceable manner. The worst that can be said is that they knocked loudly; the act of pushing the already open door is not the type of forcible entry, such as breaking down a door, with which courts are customarily concerned in search and seizure cases. In addition, the police identified themselves and explained the nature of their entry shortly thereafter. Finally, the entry occurred only after defendant had agreed to talk with the officers.

Defendant asserts in her brief that the police could have obtained a telephonic warrant "in minutes" and therefore should have done so. Defense counsel at trial argued that when a test is taken within two hours of an accident, "the blood alcohol level at the time of the test is the same as the blood alcohol level when driving," citing Utah Code Ann. § 41–6–44(1)(a)(i) (1993) in support of

this proposition. By so arguing, counsel apparently meant to suggest that the police were required to exhaust the two hours in procuring a warrant.[10]

Looking to the facts, we note the accident occurred at approximately 6:00 p.m. Defendant was apprehended within fifteen to thirty minutes of the accident, and the police attempted to ascertain her blood alcohol level approximately one hour after the accident occurred. While it is true that the police could have sought a telephonic warrant within that first hour, the officers were engaged in a continuous and ongoing search for defendant, who had left the scene of an accident moments earlier. *See Guertin*, 461 A.2d at 969. Moreover, this court has previously declined the invitation to require a showing of inability to obtain a telephonic warrant in addition to a demonstration of exigent circumstances. *State v. Morck*, 821 P.2d 1190, 1194 n. 1 (Utah App.1991). Instead, the availability of a telephonic warrant is only one of several factors relevant to the exigency determination. *Id.*

As noted previously, at the core of this inquiry is the requirement that the police conduct be objectively reasonable in light of the attendant circumstances. In the instant case, the officers in question reasonably believed that an alcohol-related offense had occurred on the basis of their observations prior to meeting defendant. They conducted a model investigation, quickly locating the vehicle involved in the accident, identifying defendant as its owner, and locating defendant. The reasonableness of the officers' behavior weighs in favor of a conclusion of exigency.

We are also influenced by the fact that defendant fled the scene of the accident, thereby committing a separate crime. By so doing, she gained the advantage of being in her residence, where greater constitutional protection is afforded. *Beavers*, 859 P.2d at

13–14. To allow her this advantage would vitiate the principle that "a criminal suspect may not defeat a proper arrest simply by retreating into the home." *Ramirez*, 814 P.2d at 1134 (applying principle in context of hot pursuit exception to warrant requirement); *accord Beavers*, 859 P.2d at 14 (noting a suspect may not defeat arrest by escaping to private place).

Finally, we recognize an additional policy reason that influences our analysis—the possible corruption of blood alcohol evidence. The City points out that requiring a search warrant in a case such as this would create a substantial likelihood of tampering with the evidence as well as claims of such tampering. A suspect may return home and consume or claim to have consumed more alcohol, inviting the assertion that a blood or breath alcohol level above the statutory threshold was caused by post-offense alcohol consumption. *See Bennett*, 361 S.E.2d at 469.

In sum, we hold that the trial court correctly concluded that exigent circumstances justified the warrantless search of defendant's home. The police were properly concerned about the dissipation of blood alcohol and the possible loss or corruption of that evidence; time is critical in obtaining evidence of blood or breath alcohol level; the offense in question was serious in nature, punishable by incarceration and a fine; the police acted reasonably and conducted a model, continuous, and ongoing investigation; and the only reason that this issue has been framed as a warrantless home search is the commission of another offense, fleeing the scene of an accident, which should not inure to defendant's benefit.

■ Our decision today should not be read as a blanket rule sanctioning warrantless home searches whenever evidence is needed in a drunk driving investigation, nor is the list of circumstances considered in this case

---

**10.** A more compelling interpretation of the statutory scheme is that it evinces the Legislature's intent to promote the rapid attainment of chemical tests for alcohol content, as indicated by the provision that tests given more than two hours after an incident may be afforded different weight, presumably less, than those administered within two hours. *See* Utah Code Ann. §§ 41-6-44(1)(a)(i), –44.5(2) (1993); *see also State v. Milligan*, 304 Or. 659, 748 P.2d 130, 134 n. 4 (1987).

intended to be exhaustive or exclusive. We hold only that warrantless searches of homes *may* under certain circumstances be appropriate in investigations of alcohol-related offenses. We caution trial courts to consider carefully all of the attendant circumstances in individual cases before concluding that exigent circumstances exist, always mindful of the heavy burden the government must bear in overcoming the presumption of unreasonableness associated with warrantless home searches. The trial court did so in this case and correctly concluded that in light of the attendant facts and circumstances, the exigency requirement was met.

## CONCLUSION

The City conceded that a search occurred, and defendant conceded the existence of probable cause. The trial court correctly concluded from the totality of circumstances present in this case that the exigency requirement was met. The warrantless search of defendant's home was therefore permissible, and the trial court properly denied defendant's motion to suppress. Accordingly, we affirm her convictions.

DAVIS and JACKSON, JJ., concur.