2002 UT App 253

**STATE of Utah, Plaintiff and Appellee,**

v.

**Curtis W. COLLINS, Defendant and Appellant.**

No. 20010371–CA.

Court of Appeals of Utah.

July 26, 2002.

Rehearing Denied Sept. 17, 2002.

Jack H. Molgard, Molgard & Hunsaker, Brigham City, for Appellant.

Mark L. Shurtleff, Attorney General, Christine Soltis, Assistant Attorney General, for Appellee.

Before Judges JACKSON, BILLINGS, and BENCH.

## OPINION

BENCH, Judge:

¶ 1 This is an interlocutory appeal by Defendant, Curtis Collins, from an order denying his motion to suppress evidence obtained from a search conducted when Defendant was taken into protective custody during involuntary commitment into a mental health unit. Defendant is charged with possession of a controlled substance, methamphetamine, a second degree felony. We affirm the trial court's denial of the motion to suppress.

## BACKGROUND

¶ 2 "We recite the facts in the 'light most favorable to the trial court's findings from the suppression hearing.'" *State v. Giron*, 943 P.2d 1114, 1115 (Utah Ct.App.1997) (citation omitted).

¶ 3 Defendant went with his mother for a scheduled appointment with Dr. William Weber at Bear River Mental Health in Brigham City. During the appointment, Defendant "gradually revved up, demonstrating confusion [and] inability to control his repetitive and threatening behavior" and continued to become more violent and irrational. Fearing for their safety, Defendant's mother and clinic staff locked the building's doors when Defendant eventually wandered outside. Defendant then began yelling and pounding on the glass doors. Dr. Weber felt that Defendant was off his medication and needed to be hospitalized so he called the Brigham City Police. The responding officers spoke with the doctor, caseworkers, and Defendant's mother, and received a "Certificate for Commitment to the Local Mental Health Authority Emergency Procedure." The Certificate was signed by Dr. Weber who had examined Defendant and concluded that he was "mentally ill and, because of his mental illness, [was] likely to injure himself or others if not immediately restrained." Utah Code Ann. § 62A–12–232(1)(a)(ii) (2000).[1] Pursuant to Utah Code Ann. §§ 62A–12–231 to –232 (2000), the officers took Defendant into custody for transport to Logan Regional Hospital where Defendant could be temporarily and involuntarily held.

¶ 4 The officers escorted Defendant to the mental health facility's emergency room. Prior to entering, they "checked [Defendant] for weapons" by doing "an outside pat-down . . . of his pockets" and boots. After medication was given to Defendant to calm him down, the officers turned Defendant over to an ambulance crew and Officer J. Baty for transport to Logan Regional Hospital. Lynn

1. We cite to the most recent version of Utah Code Ann § 62A–12–232 as there have been no relevant changes in this section since the searches at issue.

Yeates, an emergency medical technician (EMT), was part of the ambulance crew.[2] Upon arriving at Logan Regional Hospital, Deputy Yeates did a "complete pat-down search of Mr. Collins" during the admission process. During the search, Deputy Yeates found a knife sheath under clothing in Defendant's crotch area. Deputy Yeates looked inside the sheath and then, upon seeing a "small plastic baggy with a yellowish white powder," handed it to Officer Baty. In addition to the baggy and white powder, Officer Baty also found a straw and several pieces of foil that had a burnt substance on it. Further testing of the knife sheath and the powdery substance confirmed the presence of methamphetamine.

¶ 5 Defendant was charged with possession of a controlled substance, a second degree felony. Following his preliminary hearing, Defendant filed a Motion to Suppress the evidence discovered in the warrantless search of Defendant's person by Yeates and Baty. The trial court denied this motion, concluding that (1) there is an implied authorization to conduct a search incident to taking an individual into custody pursuant to sections 62A–12–231 to –232; or, in the alternative, (2) the officers were engaged in a "valid community caretaking role" so any searches came within the "emergency circumstances" exception to the warrant requirement. This court granted Defendant's petition for an interlocutory appeal to review the denial of his Motion to Suppress evidence obtained from the warrantless searches. *See State v. Koury*, 824 P.2d 474, 476 (Utah Ct.App.1991).

## ISSUES AND STANDARD OF REVIEW

¶ 6 The central issue before us is whether a protective custody search is allowed under the Fourth Amendment guarantee against unreasonable searches and seizures. First, Defendant argues that "the warrantless searches of Defendant's person and his be-

longings were in violation of the Fourth Amendment to the United States constitution and Article I, Section 14 of the Utah Constitution."[3] Second, Defendant argues that Utah Code Ann. § 62A–12–232(1)(a)(i) was not complied with when Defendant was taken into custody and that sections 62A–12–231 to –232 do not create an implied exception to the warrant requirement. Finally, Defendant argues that the searches do not fall within the "emergency circumstances" or "community caretaker" exceptions to the warrant requirement. Defendant claims that there are no facts on which to base the emergency circumstance or community caretaker exceptions, because the searches were primarily motivated by intent to arrest and seize evidence.

¶ 7 " 'In reviewing a trial court's ruling on a motion to suppress evidence, we will not overturn the trial court's factual findings absent clear error....' The trial court's legal conclusions, however, we review for correctness." *State v. Navanick*, 1999 UT App 265, ¶ 7, 987 P.2d 1276 (citations omitted); *see also State v. Anderson*, 910 P.2d 1229, 1232 (Utah 1996).

## ANALYSIS

¶ 8 Section 62A–12–232 provides, in relevant part:

(1)(a) An adult may be temporarily, involuntarily committed to a local mental health authority upon:

(i) written application by a responsible person who has reason to know, stating a belief that the *individual is likely to cause serious injury to himself or others* if not immediately restrained, and stating the personal knowledge of the individual's condition or circumstances which lead to that belief; and

(ii) a certification by a licensed physician ... stating that the physician ... has ex-

---

2. Lynn Yeates is also a deputy for the Box Elder County Sheriff's Office. There is some question as to whether Yeates was acting as a peace officer or as a private citizen. However, we assume Yeates was acting as a peace officer because this is how the parties argued the case to the trial court and on appeal.

3. Defendant refers to but engages in no analysis of article I, section 14 of the Utah Constitution. Therefore, we consider Defendant's claims only under the Fourth Amendment. *See City of Orem v. Henrie*, 868 P.2d 1384, 1387 (Utah Ct.App. 1994).

amined the individual ..., and that he is of the opinion that the individual is mentally ill and, *because of his mental illness, is likely to injure himself or others* if not immediately restrained.

(b) Application and certification as described in Subsection (1)(a) *authorizes any peace officer to take the individual into the custody* of a local mental health authority and transport the individual to that authority's designated facility.

....

(4) Transportation of mentally ill persons pursuant to Subsections (1) ... shall be conducted by the appropriate municipal, or city or town, law enforcement authority or, under the appropriate law enforcement's authority, by ambulance....

*Id.* (emphasis added).

■ ¶ 9 On appeal, Defendant argues that section 62A–12–232(1)(a)(i) was not complied with. However, Defendant cannot raise this argument on appeal, after having conceded in the trial court that his detention was legal. Defendant's attorney expressly stated, "They [meaning the police] had the obligation to transport, I agree with that." The defense cannot now "circumvent its earlier concession." *City of Orem v. Henrie*, 868 P.2d 1384, 1387 (Utah Ct.App.1994). " '[A]n appellate court normally will not consider issues, even constitutional ones, that have not been presented first to the trial court for its consideration and resolution.' " *Id.* (alteration in original) (citation omitted). We therefore decline to address this issue for the first time on appeal. *See id.*

■ ¶ 10 Additionally, Defendant argues for the first time on appeal that Defendant's due process rights were denied because the trial court's memorandum decision "advanced new theories of which the Defendant neither had notice or ... opportunity to address." Defendant claims that he had no notice that the lower court would imply a warrant exception in section 62A–12–232 or that, in the alternative, the court would base its decision on the emergency circumstances exception. Defendant therefore contends that he "was not in a position to object to the trial court's desire to take the motion under advisement

and do independent research." Our reading of the record does not support Defendant's contention. At the motion hearing, the judge stated that "[s]urely there's been other cases where in the process of a [civil commitment] to a mental health facility either weapons or contraband ... was discovered." In response, Defendant's attorney replied, "I've looked and I didn't see anything in regard to that." The court then told both parties that it would take the matter under advisement to "find some authority that's on point." The defense did not object to the court's procedure at this point and failed to object in the trial court thereafter. We therefore decline to address this issue. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal.").

■ ¶ 11 Defendant also argues that the warrantless searches of his person were conducted in violation of the Fourth Amendment. Defendant contends that the trial court erred in finding an implied exception to the warrant requirement within sections 62A–12–231 to –232. We disagree, and conclude that a search incident to protective custody, just as a search incident to a lawful arrest, is allowed under the Constitution. *See State v. Brown*, 853 P.2d 851, 855 (Utah 1992).

¶ 12 Statutory interpretation is a question of law and we accord no deference to the legal conclusions of the trial court but review them for correctness. *See Rushton v. Salt Lake County*, 1999 UT 36, ¶ 17, 977 P.2d 1201. In interpreting statutes, our "primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." *Evans v. State* 963 P.2d 177, 184 (Utah 1998). "We therefore look first to the statute's plain language." *Id.* We interpret a statute to grant an agency "such implied powers as are reasonably necessary to effectuate its express powers or duties." *Bennion v. ANR Production Co.*, 819 P.2d 343, 350 (Utah 1991).

■ ¶ 13 The legislature has clearly authorized "any peace officer to take ... [an] individual into ... custody" so the individual can be transported to a mental health authority to be involuntarily committed if certain

requirements are met. Utah Code Ann. § 62A–12–232(1)(b). These requirements include a certification by a licensed physician stating that "because of his mental illness, [the individual being committed] is likely to injure himself or others if not immediately restrained." Utah Code Ann. § 62A–12–232(1)(a)(ii). From our review of the record, it is apparent that these requirements were met. Defendant was acting in a manner that could have easily led to the serious injury of himself or others. *See id.* Dr. Weber and the other witnesses, including Defendant's mother, were concerned for their own and Defendant's safety. These facts indicate that it was proper for Dr. Weber to request that the police place Defendant in protective custody. *See* Utah Code Ann. § 62A–12–232(1).

¶ 14 The plain language of the statute indicates a concern for the safety of both the individual being taken into custody and those the statute refers to as "others." Accordingly, we agree with the trial court that there is an implied authorization to conduct a search incident to taking an individual into custody pursuant to sections 62A–12–231 to –232. Without such implied authorization to conduct a search, a "peace officer" could not effectuate the legislative intent of preserving the safety of the public or the individual being taken into custody. Therefore, we conclude that, pursuant to the statute, a peace officer is authorized to conduct a search under sections 62A–12–231 to –232.

¶ 15 We recognize that the "Fourth Amendment prohibits all unreasonable searches and seizures." *Brown,* 853 P.2d at 855 (citing *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)). "Warrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement." *Id.* Just as a search incident to a lawful arrest is constitutionally permissible, so too is a search incident to being taken into protective custody. "The core inquiry in a Fourth Amendment analysis is 'whether a person has a reasonable expectation of priva-

cy in the area searched.' " *Id.* (quoting *United States v. Bilanzich,* 771 F.2d 292, 296 (7th Cir.1985)). A person being placed in civil protective custody can expect to be searched the same as an individual who is placed in criminal arrest custody. Indeed, a protective custody search of a mentally ill individual may be more warranted given the greater likelihood that they could injure themselves or others with a concealed weapon. We thus conclude that the searches in this case did not violate the Fourth Amendment and are, therefore, constitutional.

¶ 16 Furthermore, this statutorily authorized search is not limited in scope to a simple weapons pat-down. *See Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). In a civil protective custody search, the purpose is to protect not only the peace officer but also the mentally ill individual and others. Although Defendant correctly asserts that any implied exception to the warrant requirement is "limited by constitutional protections," there was no violation of such protections in this case. Accordingly, the searches performed in this case were proper. Such a result is not only consistent with the legislature's "intent in light of the purpose the statute was meant to achieve," *Evans,* 963 P.2d at 184, but is also consistent with other case law. *See, e.g., Washington v. Dempsey,* 88 Wash.App. 918, 947 P.2d 265 (1997); *Washington v. Lowrimore,* 67 Wash.App. 949, 841 P.2d 779 (1992).[4]

¶ 17 We therefore affirm the trial court's denial of Defendant's Motion to Suppress evidence obtained from the searches incident to taking Defendant into protective custody.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.

---

4. The Washington cases also discuss emergency circumstances and community caretaker doctrines as bases for conducting protective civil custody searches. We find consideration of these doctrines unnecessary. Therefore, we do not address Defendant's arguments concerning the emergency circumstances and community caretaker exceptions to the warrant requirement.