UNITED STATES of America, Plaintiff-Appellee,

v.

Patrick Gordon PATTERSON, Defendant-Appellant.

No. 71–1044.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1971.

Richard Silverstein, Denver, Colo., for appellant.

Glen S. Kelly, Asst. U. S. Atty., Kansas City, Kan. (Robert J. Roth, U. S. Atty. on the brief), for appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Patrick Gordon Patterson appeals from a conviction by a jury on charges of violation of 18 U.S.C. § 2113(a) alleging intent to commit larceny in a bank, and 18 U.S.C. § 2113(b) alleging the taking of money from a bank in excess of $100 with intent to steal.

Appellant contends there was reversible error in the trial court's refusal to suppress evidence obtained by illegal search and seizure, and that prejudicial identification procedures were employed in the eye-witness identification process.

The basic facts upon which there appears to be no substantial disagreement are that a certificate of deposit issued to a Steven N. Mudrick was removed from his safe deposit box at the Roeland Park State Bank and cashed at the bank. The value of the certificate was $3,000, together with accrued interest. Mr. Mudrick, who had been a patient at a hospital at the time, had not cashed the certificate nor authorized anyone else to do so. While a patient at the hospital, his apartment had been burglarized. Items taken included, among other things, blank checks, a .22-caliber revolver, and the key to his safe deposit box at the Roeland Park State Bank. Mr. Mudrick testified that he knew a Marty Boyer, that she had been in his apartment shortly before his going to the hospital, and that she knew of his plans to go into the hospital.

An arrest warrant had been issued for Martha H. Carlson, also known as Marty Boyer, also known as Martha H. Patterson, the appellant's wife, in connection with a forged instrument she had uttered under Mudrick's name. Five officers served the warrant at the apartment of Mr. and Mrs. Patterson. Both Mr. and Mrs. Patterson were in the living room when the officers entered. The appellant was frisked and searched for weapons, but none was found. No search was made of Mrs. Patterson.

In the process of making the arrest, one of the police detectives went into the kitchen where he saw a partially hidden folder or envelope sitting on a shelf in a cabinet. The cabinet was four to six feet away from where Mrs. Patterson was standing at the time. The folder was in partial view of the detective because the cabinet door was about halfway open. The detective removed the folder from the cabinet against Mrs. Patterson's protests and found, among other things, a check and checkbook bearing

Steven Mudrick's name and a safe deposit box key. The detective testified he was searching for a pistol since he knew Mrs. Patterson was a suspect in the burglary of Mudrick's apartment and this was one of the items taken.

Some fourteen days after Mrs. Patterson's arrest, police officers contacted three employees of the bank in an attempt to make an identification of the man who cashed Mudrick's certificate of deposit. They were shown a series of ten or twelve pictures. Two pictures of appellant were included among them. It was not shown if there were multiple photographs of others in the series of pictures. Appellant was identified from these photographs. On the basis of this identification, he was arrested.

■ Appellant argues his conviction is improper for two reasons. The first reason concerns the search of the apartment in connection with the arrest of his wife, which disclosed the evidence involving him in the burglary of Mudrick's apartment. Appellant has standing as an "aggrieved person" to challenge the validity of the search and seizure.[1] He had both the possession of the seized property and a substantial possessory interest in the premises searched. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Search and seizure made in connection with a lawful arrest has been recently dealt with by the United States Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Indeed, both parties in this appeal have cited this court to Chimel in support of their respective contentions. The Supreme Court stated at pages 762–763, 89 S.Ct. at page 2040 of Chimel that:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. * * * And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.

■ Appellant urges this court that the Supreme Court's further statement in Chimel "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs. * * * " should govern this case. Appellant's position here is that Mrs. Patterson's arrest occurring in the living room would thereby limit the search to only that room. The record discloses that Mrs. Patterson, of her own volition, had moved to the doorway between the kitchen-dining room area and the living room. Access to the kitchen-dining room area was available to her by merely turning around. This justified the detective's precautionary measure of entering the kitchen. Appellant also argues the search should have been limited to the living room by the fact that Mrs. Patterson, though standing in the doorway, was facing toward the living room. Surely he would not argue before this court that a weapon concealed on a table or in a drawer just beyond a doorway is any less dangerous than a weapon in the room being occupied.[2]

1. Thomas v. United States, 394 F.2d 247 (10th Cir. 1968), cert. denied 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460; Fullbright v. United States, 392 F.2d 432 (10th Cir. 1968), cert. denied 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101; Cochran v. United States, 389 F.2d 326 (10th Cir. 1968), cert. denied 391 U.S. 913, 88 S.Ct. 1808, 20 L.Ed.2d 653, reh. denied 393 U.S. 899, 89 S.Ct. 70, 21 L.Ed.2d 187; Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967), cert. denied 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853; Villano v. United States, 310 F.2d 680 (10th Cir. 1962).

2. See Application of Kiser, 419 F.2d 1134, 1137 (8th Cir. 1969). That court, in a post-Chimel decision, there held the range of permissible search was not limited by arm's length but rather, "the search of the defendant's automobile while the defendant was standing within leaping range of the guns in the back seat meets the Chimel test." (Emphasis added.)

Patterson cites us to our recent decision in United States v. Baca, 417 F.2d 103 (10th Cir. 1969), as support for his argument that search warrant procedures should be strictly adhered to and not lightly dispensed with. Our statement there was "the area within the immediate control of the defendant may be searched and evidence or weapons seized without a warrant when made incidental to a lawful arrest." United States v. Baca, *supra* at 105. We there held, inter alia, that such areas as the inside of bureau drawers, nightstand, under the bed, or any similar area within the same room were beyond Baca's immediate control and the search of these areas was a violation of his Fourth Amendment protections. That decision was based on the fact that Baca was handcuffed with his hands behind his back. He was thereby effectively prevented from gaining access to such potential hiding places. The record here clearly discloses Mrs. Patterson had access to the kitchen-dining room area. She was handcuffed only after the detective had entered the kitchen and discovered the envelope containing the evidence, whereupon she became agitated and had to be restrained. Until that time, that area continued within the area of her "immediate control".

■ Appellant would have us extend our decision in *Baca* concerning loss of immediate control by bringing the court's attention to such factors present at the arrest as the presence of five officers, the arrest itself (thereby implying restraint and loss of control of the surrounding area), and the physical presence of the police detective between Mrs. Patterson and the cabinet. While these are restraints of sorts, we are not willing to hold these restraints to be as effective as the handcuffing in *Baca* to render the immediately surrounding area beyond the arrestee's immediate control.

■ The detective's entry into the kitchen was reasonable in assuring the safety of the arresting officers. This area was within the immediate control of appellant's wife. Therefore, it was a reasonable search incident to a lawful arrest. The evidence obtained would be admissible since "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968).

■ Appellant's second argument for reversal of the convictions is the presence of two photographs of himself in the series of ten or twelve pictures displayed to the bank employees by which he was identified. He claims the two photographs constituted an impermissible suggestion of his guilt and produced a "substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). Appellant does not cite any authority declaring the use of multiple photographs in a series of photographs used for identification purposes to be a per se prejudicial identification procedure.

■ This court has previously dealt with the out-of-court identification problem by holding that where "all of the witnesses positively identify the Appellant in the courtroom and testified that their courtroom identification was independent of photographs earlier shown to them. * * * [T]he in court identification of Appellant was entirely proper and Appellant did not suffer a denial of due process or prejudice."[3] Davida v. United States, 422 F.2d 528, 531 (10th Cir. 1970), cert. denied 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49. The record here reveals the three witnesses' identification was independent of the photographs. Appellant therefore has no basis for his claim of denial of due process or prejudice.

Affirmed.

3. *Cf.* United States v. Broadhead, 413 F.2d 1351 (7th Cir. 1969), cert. denied 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508, holding no error in a witness' in-court identification, even though there was an improper lineup, where there was an independent basis for the in-court identification.