**STATE of Utah, Plaintiff and Appellee,**

v.

**Dayton J. BELGARD, Defendant and Appellant.**

**No. 900267–CA.**

Court of Appeals of Utah.

Oct. 16, 1992.

---

Kenneth R. Brown (argued), Brown and Cox, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Marian Decker, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BENCH, P.J., and GREENWOOD and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

Defendant Dayton Belgard appeals his conviction by bench trial for possession of a dangerous weapon by a restricted person, a third degree felony under Utah Code Ann. § 76-10-503(2) (1990). We affirm.

Belgard asserts that the trial court erred in admitting into evidence a handgun found in his possession. We previously affirmed defendant's conviction because he failed to object to the admission of the gun at trial. He waited until after he was convicted to raise any claim that the gun was improperly seized and moved to suppress the evidence as part of a motion to arrest the conviction. We held that Belgard had waived his claim under rule 12 of the Utah Rules of Criminal Procedure, and had not made any showing why relief from that waiver should be granted as required by rule 12. *See State v. Belgard,* 811 P.2d 211 (Utah App.1991). On certiorari, the Utah Supreme Court held that the trial court granted Belgard *de facto* relief from rule 12's waiver provision when it held an evidentiary hearing in response to his motion to arrest judgment. The supreme court then remanded the case to this court "for the purpose of addressing the issue

defendant preserved for appeal." *See State v. Belgard,* 830 P.2d 264 (Utah 1992).

## FACTS

On March 2, 1989, Belgard and his wife were videotaped while meeting with an undercover agent to discuss selling a handgun to the agent. When Belgard arrived at the meeting, he removed the gun from beneath his shirt. Despite the agent's offer to buy the gun, Belgard refused to sell because he still had "a couple of jobs" he wanted to do with the gun. Belgard left the meeting carrying the gun in the waistband of his pants.

The next day, a man and a woman attempted to trade a VCR and a handgun for a used car at a dealership. Their offer was declined and they left. The salesman later noticed that the keys to the car were missing, and that night the car was stolen. The next day, an employee of the dealership saw the stolen car pull into a motel. When the police responded, they located the car in unit four's carport. After calling for backup and securing the area, an officer knocked on the door of unit four to investigate. The officer testified that when Belgard opened the door in response to his knock, he saw a gun sitting on the bed which was approximately five feet from the door. He immediately entered the room, arrested Belgard for the theft of the car, and seized the gun. It was subsequently learned that Belgard was a restricted person, which fact led to the charge and conviction involved in this appeal.

## ANALYSIS

### Investigation

■ Belgard asserts that by arresting him without a warrant, the officer violated his Fourth Amendment rights to be free from unreasonable seizures. *See generally Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (police may not make warrantless, nonconsensual entry to make routine felony-arrest).[1] In

---

1. Belgard also claims that his arrest violated his rights under Article I, section 14 of the Utah Constitution, which contains language virtually identical to that of the Fourth Amendment. Be-

cause Belgard makes no separate analysis, we do not engage in an independent state constitutional discussion. *See State v. Collard,* 810 P.2d 884, 885 n. 2 (Utah App.1991).

particular, Belgard claims that since the officer had enough probable cause to obtain an arrest warrant before he approached unit four, the officer violated his constitutional rights by knocking on his motel door; therefore, any evidence obtained by the officer as a result of his approaching unit four without an arrest warrant should be suppressed.[2] The state counters that the officer did not approach unit four in order to make an arrest, but rather, to investigate who was in the unit, and to inquire about the presence of the stolen car.

The trial court denied Belgard's belated motion to suppress. It found that the officer approached unit four as part of his ongoing investigation of the car theft. When reviewing a trial court's refusal to grant or deny a motion to suppress, we will not disturb the trial court's factual findings unless they are clearly erroneous. *State v. Palmer*, 803 P.2d 1249, 1251 (Utah App. 1990). Belgard has not shown why it was clearly erroneous for the trial court to find that the officer approached the door as part of his investigation. We therefore accept the trial court's findings that the officer approached unit four only to investigate and not to arrest the theretofor unknown occupant of unit four. Our initial inquiry, therefore, focuses on whether the officer was constitutionally prohibited from knocking on the door of unit four as part of his investigation.

Belgard asserts that the officer had probable cause to obtain an arrest warrant once he located the stolen car outside of unit four, and therefore was required to cease his investigation without ever approaching the unit. The state counters that the officer did not have probable cause before approaching unit four. We need not decide whether the officer had probable cause because a police officer's authority to investigate suspicious activity in a nonintrusive manner is not governed by the presence or lack of probable cause. Belgard apparently assumes that since a police officer may approach a person to investigate

suspected criminal activity even though the officer does not have probable cause to make an arrest, *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), a police officer may not approach a person suspected of criminal conduct for any purpose short of effecting an arrest if the officer has probable cause to make an arrest. Such inverse logic does not hold. Belgard presents no authority that requires the police to cease a nonintrusive investigation simply because the police have arguably obtained enough information to establish probable cause.

The Utah Supreme Court held in *State v. Folkes*, 565 P.2d 1125, 1127 (Utah 1977), that it is "essential that law officers should have reasonable liberty to investigate crimes without undue impediment or restriction." The supreme court made the following observation.

> When a police officer sees or hears conduct which gives rise to suspicion of crime, he has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law.

*Id. See also State v. Whittenback*, 621 P.2d 103, 105 (Utah 1980) (police officer may enter private property that is open to the public in order to ask suspects what they were doing and to ask for identification).

We hold that the officer in this case was not constitutionally prohibited from knocking on the door of unit four as part of his investigation. To require police officers to make a probable cause determination before proceeding with the next step of an investigation, or risk suppression of any evidence obtained once probable cause might be established, would unduly impede the legitimate investigative powers of law enforcement. It would also discourage thorough investigations before warrants are sought. Such a rule would decrease,

---

**2.** This is the only Fourth Amendment claim briefed by Belgard and therefore is the only issue we address.

rather than increase, police efforts to obtain accessible information before intruding upon a suspect's privacy.[3]

### Seizure of the Handgun

■ The officer's knock at unit four's door in order to investigate suspicious activity was not constitutionally intrusive. *See Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (police officer may investigate suspicious activity). The door of unit four was lawfully accessible to the public. *See, e.g., State v. Harris*, 671 P.2d 175, 179 (Utah 1983) (police have right to approach front door); *State v. Atwood*, 831 P.2d 1056, 1057–59 (Utah App.1992) (police have right to enter apartment house parking lot which was open and non-exclusive). Once at the door, the officer was free to observe whatever was in his open view that might have been observed by any other member of the general public coming to the door.[4] "For an officer to look at what is in open view from a position lawfully accessible to the public cannot constitute an invasion of a reasonable expectancy of privacy." *State v. Lee*, 633 P.2d 48 (Utah 1981). When Belgard opened the door, he allowed the officer to see what would have been visible to any member of the public standing at Belgard's open door. "[A]n officer is not expected to ignore what is exposed to observation from a position where he is lawfully entitled to be...." *Id.* at 51. *See also State v. Echevarrieta*, 621 P.2d 709, 711 (Utah 1980). Belgard could have refused to open the door, and effectively shielded himself and the gun from open view, but he chose to do otherwise. Inasmuch as Belgard allowed the police officer to see the contents of the room, the officer did not conduct an unconstitutional search. *See State v. Kelly*, 718 P.2d 385, 389 (Utah 1986) (defendant's expectation of privacy was "substantially reduced" when he invited police into his home during an investigation).

■ Even though it was permissible under the open view exception for the officer to observe the occupants and contents of unit four, the open view exception alone did not permit a warrantless intrusion into Belgard's room. When evidence is in open view from outside a protected area, there must be "some additional legal predicate for the intrusion necessary to effect the seizure." *Brown v. State*, 15 Md.App. 584, 292 A.2d 762, 774–75 (1972). In other words, there must still be some other exception justifying the warrantless intrusion. In this case, the trial court found that a legitimate concern for the officer's safety constituted exigent circumstances that justified the intrusion.

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to ... neutralize the threat of physical harm.

*Terry*, 392 U.S. at 24, 88 S.Ct. at 1881. *See generally State v. Larocco*, 794 P.2d 460,

---

3. Not only would such a restriction place a tremendous burden upon the police, it would place a significant burden upon the courts as they would be required to pinpoint when probable cause could have first been established. This would be an impossible task in complex cases where numerous officers are simultaneously investigating different aspects of a case.

Furthermore, it would be logically inconsistent to require police officers to make probable cause determinations before proceeding with an investigation, given the fact that the demand for the issuance of a warrant by a neutral magistrate is based upon the premise that police officers often cannot impartially determine whether they have probable cause. *Payton*, 445 U.S. at 586 n. 24, 100 S.Ct. at 1380.

4. Our discussion of the "open view" doctrine should not be confused with the "plain view" doctrine inasmuch as the former is a "pre-intrusive" exception and the latter is a "postintrusive" exception, and the requirements for each are different. *See generally Brown v. State*, 15 Md. App. 584, 292 A.2d 762, 774–75 (1972); *State v. Romero*, 660 P.2d 715, 718 (Utah 1983). The trial court in this case found that the gun was properly seized under either the exigent circumstances exception or the plain view exception once Belgard was arrested. Belgard appeals the constitutionality of his warrantless arrest with the hopes of establishing that the seizure of the gun was the fruit of the poisoned tree. He has not directly challenged the seizure of the gun incident to the arrest; therefore, we do not discuss it.

469–70 (Utah 1990) (warrantless search or seizure may be permitted in order to ensure officer's safety).

■ In challenging the trial court's finding of exigent circumstances, Belgard erroneously focuses on the circumstances existing before the officer approached the door of unit four. He asserts that since both exits to the unit were covered by officers, there could be no exigent circumstances requiring an intrusion into the unit. Belgard's argument is misdirected. The trial court properly looked to the circumstances after the officer permissibly approached the unit as part of his investigation, when Belgard opened the door and the officer saw the occupants and the gun. The trial court therefore made the proper inquiry in ascertaining whether "the procurement of a warrant [at that point in time] would have jeopardized the safety of the police officers...." *Larocco*, 794 P.2d at 470. Belgard has not challenged the trial court's factual finding that when Belgard opened the door to unit four, the investigating officer was legitimately concerned for his safety.[5] We therefore do not disturb the trial court's determination that exigent circumstances led to the warrantless seizure of the gun.

#### Prejudice

■ Moreover, Belgard has failed to show that the admission of the handgun prejudiced the outcome of his case. "In order to constitute reversible error, the error complained of must be sufficiently prejudicial that there is a reasonable likelihood of a more favorable result for the defendant in its absence." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989). The State presented significant evidence, in addition to the gun itself, that Belgard possessed or exercised custody or control over a dangerous weapon as required by Utah Code Ann. § 76–10–503(2) (1990).

The videotape of Belgard discussing the possibility of selling the gun to the undercover agent and the testimony of several witnesses were admitted without objection at trial. The eyewitness testimony clearly established that Belgard arrived at the meeting with the gun, possessed and exercised control over the gun at the meeting, and left the meeting with the gun. *See State v. Heaps*, 711 P.2d 257, 260 (Utah 1985) (objection to admission of gun after extensive eyewitness testimony establishing possession "was merely academic"). Furthermore, Belgard's counsel conceded at trial that he was in possession of the gun: "[I]t's clear that on that day Mr. Belgard had in his possession that exhibit."[6]

Given the uncontroverted and untainted evidence, as well as Belgard's concession that he possessed the gun, there is no reasonable likelihood of a more favorable result if the gun were suppressed. *Echevarrieta*, 621 P.2d at 712 n. 11 ("the erroneous admission of evidence, standing alone, is insufficient to set aside a verdict unless it 'had a substantial influence in bringing about the verdict' ") (quoting *Bambrough v. Bethers*, 552 P.2d 1286, 1290 (Utah 1976)). Belgard therefore has not shown that the admission of the gun prejudiced the outcome of his case.

#### CONCLUSION

The police officer was not constitutionally prohibited from knocking on Belgard's

---

**5.** While a review of the trial record reveals the possibility that Belgard raised additional Fourth Amendment concerns in the trial court, no other challenges have been briefed or raised on appeal. We therefore restrict the scope of our analysis to the issues properly raised. *See Larocco*, 794 P.2d at 473 (court does not address Fourth Amendment issues not raised, briefed or argued).

**6.** Rather than argue that he was not in possession of the gun, which would have been difficult given the uncontradicted evidence that he was,

Belgard's trial strategy was to claim that the gun was inoperable due to its age and condition and therefore was not a dangerous weapon. *See State v. Davis*, 711 P.2d 232, 234 (Utah 1985) (addressing question of whether defendant's gun was a dangerous weapon). It was therefore potentially to his advantage at trial to have the gun admitted for physical inspection. It was only after Belgard changed legal counsel following the conclusion of trial that there was a change in legal strategy and an attempt to exclude the weapon.

door as part of his investigation. Belgard fails to challenge the trial court's finding that when Belgard opened the door there existed exigent circumstances leading to the seizure of the gun. He also fails to show that the admission of the handgun into evidence prejudiced the outcome of his case.

We therefore affirm Belgard's conviction.

GREENWOOD and ORME, JJ., concur.