STATE of Utah, Plaintiff and Appellee,

v.

Stephen Laine WELLS, Defendant and Appellant.

No. 950773–CA.

Court of Appeals of Utah.

Nov. 21, 1996.

Elizabeth A. Bowman and Linda M. Jones, Salt Lake Legal Defender Association, Salt Lake City, for Defendant and Appellant.

Jan Graham, Attorney General, and Marian Decker, Assistant Attorney General, Salt Lake City, for Plaintiff and Appellee.

Before ORME, P.J., and BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Stephen Wells appeals his conviction of attempted possession of a controlled substance, a class A misdemeanor, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1994). Wells claims the trial court erred when it denied his motion to suppress evidence. We reverse and remand.

## FACTS

Because search and seizure issues are fact sensitive, "we recite the facts in detail." *State v. Naisbitt,* 827 P.2d 969, 970 (Utah App.1992).

On December 27, 1993, four Salt Lake County police officers went to appellant's home to execute drug-related arrest warrants for appellant and his girlfriend, Kelly Jensen. One of the officers, Detective Russo, knew appellant. While Detective Russo stood out of view, another officer knocked on a rear sliding glass door. When appellant appeared at the door, the officer asked if "he were Steve Wells, or if he lived there." Appellant replied that "no Steve is here." Detective Russo then made a positive identification of appellant. Appellant also recognized Detective Russo and immediately ran downstairs.

Detective Russo announced that the officers had arrest warrants, but appellant refused to open the door. Thus, to gain entry, Detective Russo picked up a nearby shovel and shattered the sliding glass door. Deputy Sterner entered the home first and ran downstairs, where he was bitten by appellant's dog. Deputy Sterner testified he arrested appellant at the bottom of the stairs immediately after the officers had subdued the dog. Jensen was found hiding in a downstairs closet and was also placed under arrest.

While sitting with Jensen in a bedroom adjacent to where she was arrested, Deputy Sterner observed a baggie containing a substance he believed to be marijuana. As he went to retrieve the baggie, Deputy Sterner also noticed two marijuana pipes on the floor. Deputy Sterner testified that he then asked Jensen "where the cocaine was." In response, Jensen explained that appellant had hidden marijuana in a vacuum cleaner and cocaine in the lining of a leather jacket lying on a bed. Detective Russo recognized the jacket as belonging to appellant. Subsequently, the officers retrieved the cocaine from the lining of the jacket.

Detective Russo testified that "the basement ... is divided into about three rooms, but they all adjoin," and that appellant "was down in the basement just several feet from us" when the cocaine seizure occurred. Both Detective Russo and Deputy Sterner testified that sometime after arresting the suspects, the officers determined there was no one else in the house.

An amended information was filed charging appellant with unlawful possession of controlled substances (cocaine and marijuana). Appellant pleaded not guilty to the charges. Appellant then filed a motion to suppress the marijuana and cocaine as evidence obtained in an illegal, warrantless search. The trial court denied the motion to suppress, concluding exigent circumstances justified the search and seizure.

After the denial of his motion to suppress, appellant withdrew his not guilty plea, and the State dismissed the second count dealing with the marijuana possession. Appellant then pleaded guilty to the charge of attempted possession of a controlled substance (cocaine), conditioned upon his right to appeal the trial court's denial of the motion to suppress and to withdraw the guilty plea if successful on appeal. *See* Utah R.Crim. P. 11(i); *State v. Sery,* 758 P.2d 935 (Utah App.1988).

On appeal, appellant contends the trial court erred in denying his motion to suppress this warrantless seizure of contraband.

## STANDARD OF REVIEW

"The factual findings of a trial court that underlie its decision to grant or deny a motion to suppress will not be disturbed on appeal unless clearly erroneous." *State v. Davis,* 821 P.2d 9, 11 (Utah App.1991); *accord State v. Smith,* 781 P.2d 879, 880 (Utah App.1989). The trial court's "legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno,* 910 P.2d 1245, 1247 (Utah App.), *cert. denied,* 916 P.2d 909 (Utah 1996).

## ANALYSIS

### Scope of Review

■ At the outset, we must determine the proper scope of our inquiry in this case. Although appellant asks us to review the issues underlying the marijuana seizure, the State argues that, because the marijuana charge was dismissed pursuant to the plea agreement, the legality of the seizure underlying that charge is not properly before this court.

We agree with the State and therefore do not address the marijuana seizure. *See State v. Rivera,* 906 P.2d 318, 320 (Utah App.1995), *cert. granted,* 917 P.2d 556 (Utah 1996). In *Rivera,* this court interpreted Utah R. Crim. P. 11(i) to "permit the review of the denial of pretrial motions which were made in connection with the charge to which the defendant entered a plea." *Id.* We concluded, however, that the rule "does not allow review of the denial of pretrial motions relating to charges which were dismissed and to which the defendant did not enter a plea." *Id.* Because the State dismissed the marijuana charge, and appellant pleaded guilty only to the cocaine charge, "[w]e deem it unnecessary and, in fact, improper to analyze" appellant's challenge to the trial court's ruling on the marijuana seizure. *Id.* Therefore, we limit our analysis to the trial court's denial of appellant's motion to suppress the cocaine.[1]

---

1. Before the trial court, appellant did not seek a separate analysis of the Utah Constitution's search and seizure provision, article I, section 14. Therefore, we limit our discussion to the

### Motion to Suppress

"Warrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement." *State v. Brown,* 853 P.2d 851, 855 (Utah 1992) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). The State must demonstrate "that the circumstances of the seizure constitute an exception to the warrant requirement." *State v. Strickling,* 844 P.2d 979, 985 (Utah App.1992); *see also State v. Christensen,* 676 P.2d 408, 411 (Utah 1984) ("Since the officers had no warrant, it was the burden of the State to show that the search was lawful.").

### A. Exigent Circumstances

■ Appellant argues the trial court erroneously upheld the search under the exigent circumstances exception to the warrant requirement.[2] Exigent circumstances exist "only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for *immediate action.*" *United States v. Satterfield,* 743 F.2d 827, 844 (11th Cir.1984). Utah courts have identified several exigent circumstances that may justify a warrantless search, including the immediate need to prevent harm to the officers, destruction of evidence, or escape of the suspect. *State v. Ashe,* 745 P.2d 1255, 1258 (Utah 1987); *City of Orem v. Henrie,* 868 P.2d 1384, 1388 (Utah App.1994); *State v. Belgard,* 840 P.2d 819, 823 (Utah App.1992); *State v. Palmer,* 803 P.2d 1249, 1252 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991). "The determination of exigency is based on the totality of the circumstances." *Henrie,* 868 P.2d at 1388.

■ In *State v. Beavers,* 859 P.2d 9 (Utah App.1993), this court concluded "[t]he existence of exigent circumstances must be based on the reasonable belief of the police officer."

*Id.* at 18. The mere possibility that a suspect may have a weapon, *id.* at 19, or that evidence might be destroyed, *Palmer,* 803 P.2d at 1253, is insufficient. *See also United States v. Tarazon,* 989 F.2d 1045, 1049 (9th Cir.1993) (stating police must have "reasonable belief" that exigent circumstances exist); *United States v. Roark,* 36 F.3d 14, 17 (6th Cir.1994) (rejecting exigent circumstances claim based solely on "unsubstantiated suspicions" of police officer who feared removal of marijuana).

■ The record reflects that both suspects were handcuffed and in custody when the cocaine was seized. Detective Russo testified that, although appellant attempted to elude the officers before their entry, the officers handcuffed him soon after entering the home. Detective Russo further testified that Jensen was "[p]robably handcuffed" when she directed the officers to appellant's jacket. The officers had controlled the initially chaotic situation by the time they searched the jacket. Therefore, the initial exigencies, which had dissipated by the time of the search, could not have justified the cocaine seizure.

The State argues the officers did not determine whether third persons were in the home until after the arrests were made. The officers, however, never indicated any belief that others in or outside the home were likely to seize the contraband. *See United States v. Napue,* 834 F.2d 1311, 1327 (7th Cir.1987) (recognizing possibility that officers "suspected, or had reason to suspect," that hotel room was occupied, but concluding "the government did not offer evidence at the suppression hearing to support such a suspicion"). Because "[t]here is almost always a partisan who might destroy or conceal evidence," *United States v. Davis,* 423 F.2d 974, 979 (5th Cir.1970), the State must show more

---

Fourth Amendment. *See State v. Ramirez,* 817 P.2d 774, 785 (Utah 1991); *State v. Belgard,* 840 P.2d 819, 821 n. 1 (Utah App.1992). Appellant's mere reference to article I, section 14, in his motion to suppress lacked the "actual analysis" required to preserve the state constitutional issue for appeal. *See State v. Shamblin,* 763 P.2d 425, 426 n. 2 (Utah App.1988).

**2.** The State must also show probable cause to uphold a warrantless search. *State v. Harris,* 671 P.2d 175, 179 (Utah 1983); *State v. Menke,* 787 P.2d 537, 542 (Utah App.1990). However, appellant concedes that Jensen's disclosures as to the location of the drugs provided the officers with sufficient probable cause for the search. *See City of Orem v. Henrie,* 868 P.2d 1384, 1388 (Utah App.1994).

than "a mere possibility that evidence might be removed," *People v. Blasius,* 435 Mich. 573, 459 N.W.2d 906, 916 (1990). The State failed to present evidence "that even intimated that the officers reasonably believed that destruction, removal or concealment of contraband material was imminent or threatened." *State v. Peterson,* 525 S.W.2d 599, 607 (Mo.Ct.App.1975).

Considering the "mosaic of evidence" before us, *Ashe,* 745 P.2d at 1258, we cannot conclude that exigent circumstances justified the officers' warrantless seizure of cocaine from appellant's jacket.

### B. Search Incident to Arrest

Alternatively, the State argues for the first time on appeal that the officers properly seized the cocaine incident to appellant's lawful arrest.[3] We disagree. The State has failed to meet its burden of proof to justify this search as a search incident to arrest.

As is the standard in all search and seizure cases, whether a search is reasonable under the incident-to-arrest exception depends on the particular facts of each case. *See State v. Austin,* 584 P.2d 853, 855 (Utah 1978). Under this exception, an officer may search the area within the arrestee's "immediate control" to prevent the arrestee from obtaining weapons or destroying evidence. *Chimel v. California,* 395 U.S. 752, 763, 766, 89 S.Ct. 2034, 2040–41, 23 L.Ed.2d 685 (1969); *Austin,* 584 P.2d at 855; *State v. Harrison,* 805

P.2d 769, 784 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991).

In discussing the "immediate control" test, the *Chimel* Court refused to draw an arbitrary line by validating, for example, the search of one room, while invalidating the search of a larger area. Rather, the Court held:

No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and *the area within his reach* on the one hand, and more extensive searches on the other.

*Chimel,* 395 U.S. at 766, 89 S.Ct. at 2041 (emphasis added) (footnotes omitted). The *Chimel* Court also concluded that while there was ample justification for a search of the area within the arrestee's immediate control, "[t]here is no comparable justification ... for routinely searching any room other than that in which an arrest occurs." *Id.* at 763, 89 S.Ct. at 2040.[4]

Utah courts have focused on the totality of the factual circumstances to determine if the area searched was within the arrestee's immediate control. The case of *State v. Austin,* 584 P.2d 853 (Utah 1978), is the Utah case closest to the case at bar.[5] However, *Austin*

---

3. We note that "[a]lthough search incident to arrest was not the ground relied upon by the trial court, this court may affirm the trial court's decision on any proper ground." *State v. Moreno,* 910 P.2d 1245, 1247 n. 1 (Utah App.), *cert. denied,* 916 P.2d 909 (Utah 1996).

4. Similarly, the Utah Supreme Court in *State v. Austin* held "[n]o warrant was necessary as long as the search was .... restricted to a single room where the defendant was arrested and held in custody." 584 P.2d 853, 857 (Utah 1978). Although the *Chimel* Court concluded the room of arrest was the maximum area of a permissible search incident to an arrest, subsequent courts have recognized that *Chimel*'s immediate control test, in some circumstances, such as a defendant standing in a doorway, could include two adjoining rooms. *See United States v. Patterson,* 447 F.2d 424, 426–27 (10th Cir.1971) (upholding search of kitchen cabinet located four to six feet from defendant, who was standing in doorway between kitchen and living room).

5. Our colleague in dissent relies on Utah cases which we believe are dissimilar to the present case. Both *State v. Kent,* 665 P.2d 1317 (Utah 1983), and *State v. Moreno,* 910 P.2d at 1245, involved searches of automobiles incident to arrest, which this court has recognized requires a different standard. *See Moreno,* 910 P.2d at 1247–48. Also, in *State v. Harrison,* 805 P.2d 769 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991), the defendant was arrested on a public sidewalk in the company of his wife and babies. *Id.* at 773. The *Harrison* court relied on the search incident to arrest line of cases involving searches of automobiles and noted the public nature of the arrest meant "there was no way to secure [the diaper bag] at the scene pending the obtaining of a warrant to search it. The bag, stroller, and babies were going to be moved. Additionally, babies being babies, somebody would need to get into the bag before long." *Id.* Thus, the circumstances of an arrest occurring in a public place is not readily comparable to an arrest occurring in a defendant's home.

involved the search of a hotel room rather than a defendant's home. *Id.* at 856. Notably, the *Austin* court recognized the inherent differences an arrest at a hotel creates. *Id.* at 856–57. The evidence found in the hotel was in a garbage can and the court noted that it was likely that "even though the appellant was in police custody, the hotel maid could have entered the room and inadvertently destroyed the evidence." *Id.* at 857. Thus, the court relied upon the totality of the circumstances and not just the proximity of the evidence to the defendant. *Id.* at 855 ("[T]he unreasonableness of a search is determined from the attendant circumstances.").

■ Courts have relied upon the following factors to determine whether the items seized were within a defendant's control: (1) "[w]hether or not the arrestee was placed in some form of restraints";[6] (2) "[t]he position of the officer vis-a-vis the defendant in relation to the place searched"; (3) "[t]he ease or difficulty of gaining access" to the searched area or item; and (4) "[t]he number of officers present in relation to the number of arrestees or other persons." Wayne R. LaFave, *Search and Seizure* § 6.3(c), at 306–07 (3d ed.1996).

Applying the relevant factors to the facts of the present case demonstrates that the cocaine in the jacket's lining was not within appellant's control. First, appellant was in handcuffs when the search took place. Second, in determining the officers' and appellant's proximity to the item searched, the State relies on one officer's testimony that appellant was in the basement "several feet" away. Taken in the context of the officer's entire response, this testimony is too ambiguous to support the search. In response to a question asking where appellant was as the two officers searched the jacket, Officer Russo initially replied "I can't tell you for sure" before he stated the appellant was "several feet" away in the basement. More importantly, the officer's testimony never defines

"several feet" more accurately, and "in the basement" was not defined to mean within the same room, in an adjoining room, or in the hallway. Several feet could mean three or twenty. Furthermore, the two police officers were between appellant and the jacket.

Another factor supporting our conclusion is appellant's relative difficulty in accessing the evidence. The evidence was not only in a different room from where appellant's arrest took place, the evidence was within the lining of the jacket. It is difficult to see how appellant could gain access to the evidence in order to destroy it while handcuffed and with two police officers between him and the evidence.

Additionally, there were four police officers at appellant's home when the search took place. The officers had already done a protective sweep of the home and knew that only appellant and his girlfriend were present. Moreover, there is no evidence of any safety concerns as to the jacket and no evidence that appellant had requested to wear the jacket or take it with him. Also, there was no evidence that appellant had made any motion toward the jacket. The only testimony was that, after both arrests had been made, appellant's girlfriend told the officers where the cocaine was and she took them to the jacket. In sum, the search has none of the typical characteristics of looking for weapons or contraband within the control of an arrestee. The search was clearly conducted because appellant's girlfriend indicated where the cocaine could be found and not because the officers were checking the immediate area incident to defendant's arrest.[7]

The State simply has not met its burden of proving, as required under *Chimel*, that defendant was or anyone else would be within a range close enough to obtain possession of the jacket and destroy the evidence or that the officers were reasonably checking for weapons. Therefore, the search cannot be

---

6. Utah courts have determined that being placed in restraints is not dispositive; nonetheless, it is one factor to be considered in determining the "immediate control" question. *Austin,* 584 P.2d at 855; *Harrison,* 805 P.2d at 785 n. 29.

7. This is probably why the prosecutor did not argue the search was incident to arrest in defending the search at the suppression hearing and why the trial court did not uphold the search as incident to arrest.

upheld under the search incident to arrest exception to the warrant requirement.

## CONCLUSION

The trial court erroneously determined that exigent circumstances justified the warrantless seizure of cocaine from appellant's jacket. In addition, the State failed to demonstrate that the search was permissible under the search incident to arrest doctrine. Therefore, we reverse, order the evidence suppressed, and remand for further proceedings consistent with this opinion.

ORME, P.J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. Regardless of whether exigent circumstances justified the search, I believe the search was proper as incident to appellant's lawful arrest. The jacket was within appellant's "immediate control," as that term has been defined by the courts.

The main opinion recognizes that police restraint is not dispositive of the immediate control issue. Therefore, even though appellant was handcuffed during the seizure, the jacket could still have been within his immediate control. *See State v. Kent,* 665 P.2d 1317, 1317–18 (Utah 1983) (upholding search where defendant was "handcuffed and required to lie on the ground" and ten officers were present); *State v. Moreno,* 910 P.2d 1245, 1247 (Utah App.) (stating that "doubt about the arrestee's ability to access weapons or evidence in a particular area because of distance, or police restraint, does not prohibit police from properly searching that area"), *cert. denied,* 916 P.2d 909 (Utah 1996).

The main opinion concludes that, because the cocaine was "within the lining of the jacket," it would have been difficult for appellant to grab the evidence. This court, however, has upheld the seizure of a diaper bag containing a gun where it was improbable that the suspects could physically access the weapon. *State v. Harrison,* 805 P.2d 769, 784–85 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991); *see also United States v. Palumbo,* 735 F.2d 1095, 1097 (8th Cir.) (stating that area of immediate control "is

not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area"), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984); *Ricks v. State,* 82 Md.App. 369, 571 A.2d 887, 891 (1990) (noting that "the area deemed to be within an arrestee's reach, lunge or grasp is broad" and is not necessarily limited by "apparent obstacles inhibiting an arrestee's movement"), *aff'd,* 322 Md. 183, 586 A.2d 740 (1991). Furthermore, while the main opinion concludes that no one else was close to the jacket, the record reflects that Jensen was standing near the officers when they searched the jacket. Thus, as in *Harrison,* the officers in this case may have been concerned that someone might attempt to gain access to the evidence. *See Harrison,* 805 P.2d at 785.

Finally, and perhaps most importantly, I strongly disagree that Detective Russo's testimony was ambiguous in describing the distance between appellant and the jacket. Detective Russo testified as follows:

[Prosecutor]: Okay. All the time you're talking marijuana and cocaine, is that correct?

[Detective Russo]: Yes.

[Prosecutor]: And Mr. Wells is present?

[Detective Russo]: Yes.

[Prosecutor]: Uh, how close is he to you in the conversation?

[Detective Russo]: *He was within feet.*

. . . .

[Appellant's Counsel]: Did you go to the jacket?

[Detective Russo]: Kelly Jensen took me to the jacket, and Sterner picked it up and she said look in the sleeve. . . .

[Appellant's Counsel]: Okay. Where was Mr. Wells at the time you uh, found the jacket and looked through it?

[Detective Russo]: He was—the basement has, is divided into about three rooms, but they all adjoin, um, I can't tell you for sure, he was, *he was down in the basement just several feet from us.*

(Emphasis added.) In my view, Detective Russo's inability to specify the exact number of feet separating appellant and the jacket is

not fatal to the State's argument. I believe that "several feet" is a sufficient approximation of the "area from within which [appellant] might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *see also State v. Robalewski*, 418 A.2d 817, 823 (R.I.1980) (requiring an approximation of the distance between the arrestee and the object searched). Therefore, I believe the uncontroverted evidence establishes that the jacket was within appellant's immediate control.

In *State v. Austin*, 584 P.2d 853, 856 (Utah 1978), the Utah Supreme Court held that a search incident to arrest must be "properly confined to a limited area within the [suspect's] control." I believe the limited search in this case was so confined. I would therefore affirm the trial court's denial of appellant's motion to suppress the cocaine.