2004 UT App 324

STATE of Utah, Plaintiff and Appellee,

v.

Rameen Rey AMIRKHIZI, Defendant and Appellant.

No. 20030639–CA.

Court of Appeals of Utah.

Sept. 23, 2004.

Loni F. DeLand and Michael R. Sikora, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and J. Frederic Voros Jr., Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS, and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant Rameen Rey Amirkhizi appeals a conviction of two counts of possession of a controlled substance, a third degree felony. *See* Utah Code Ann. § 58–37–8(2)(a)(i) (2002). Defendant argues that the trial court erred when it concluded that the emergency medical technician (EMT) who searched his backpack was not engaged in state action, and that the contraband found in Defendant's backpack would have been inevitably discovered by police officers and was therefore admissible. We reverse.

## BACKGROUND

¶ 2 Dexter Mohler was an EMT employed by the Evanston Fire Department in Uintah County, Wyoming. On September 17, 2002, Mohler responded to a one-car accident on Interstate 80 in eastern Utah, not far from the Wyoming border. Mohler arrived at the scene of the accident and found a station wagon that had apparently struck a roadside embankment. Mohler observed Defendant standing outside the vehicle with what appeared to be minor injuries. Although Defendant was initially reluctant to go to an emergency room to have his injuries checked, Mohler eventually convinced him it was in his best interest to go.

¶ 3 After Defendant was strapped to a gurney and placed in the back of an ambulance, he asked Mohler to retrieve his car keys. Because Defendant was immobilized, Mohler asked Defendant if he wanted him to place the keys in Defendant's backpack. Defendant said yes, and Mohler unzipped one of the backpack's side pockets and placed the keys inside. While doing this, Mohler noticed a prescription pill bottle for the drug hydrocodone. Mohler examined the bottle and saw that the name on the bottle was not Defendant's. Mohler also observed that although there was a capsule at the bottom of the bottle, the bottle did not rattle when he turned it over. Without asking Defendant's permission, Mohler opened the bottle and saw a small bag containing white powder. According to Mohler, he opened the bottle because he was concerned that Defendant had taken some medication that he had not told Mohler about.

¶ 4 Based on Mohler's training and experience,[1] he believed the powder he had found was a controlled substance. Concerned that there might be more drugs or even weapons in the backpack, Mohler proceeded to search the rest of the backpack. Upon opening another of the backpack's pockets, Mohler discovered two syringes. Mohler informed the nurse in the back of the ambulance about the syringes "as well as some other things to kind of give him a heads up to be a little more cautious with [Defendant]."

¶ 5 Mohler also told two Wyoming police officers who were at the scene what he had found in Defendant's backpack. One of these officers then informed Utah Highway Patrol Trooper Brian Davis about Mohler's discovery. The officer also told Trooper Davis that Defendant "had a known drug history."[2]

¶ 6 Based on this information, Trooper Davis asked Defendant if he could search Defendant's backpack. When Defendant refused to consent to the search, Trooper Davis searched the backpack anyway. At the time of the search, Defendant's backpack was lying on the hood of a patrol car parked behind the ambulance. According to Trooper Davis, no warrant to conduct the search was necessary because of the "unusual circumstances of the case," the information the Wyoming police officer had provided him, and Defendant's refusal to consent to the search.

¶ 7 When Trooper Davis opened the prescription pill bottle inside the backpack, he found three plastic bags: the first containing a white powdery substance, the second containing what he suspected to be methamphetamine, and the third containing what he suspected to be marijuana. Trooper Davis also found three pill capsules, each containing a white powdery substance. A field test conducted by Trooper Davis revealed that the white powdery substance was cocaine. Trooper Davis then searched Defendant's car and found marijuana residue in the car.[3]

¶ 8 Defendant was later charged with the following: two counts of possession of a controlled substance, a third degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (2002); possession of a controlled substance with intent to distribute, *see* Utah Code Ann. § 58–37–8(1)(a)(ii) (2002); and possession of drug paraphernalia, a class B misdemeanor. *See* Utah Code Ann. § 58–37a–5 (2002). Defendant filed a motion to suppress on the basis that the searches conducted by Mohler and Trooper Davis were unlawful. The trial court denied Defendant's motion and Defendant entered a conditional guilty plea to the two counts of possession of a controlled substance, reserving his right to appeal the denial of his motion to suppress. The remaining

---

1. Mohler has received training in the detection of controlled substances from both the fire department and the ambulance service. The purpose of this training was to make EMTs aware of potential problems, such as clandestine drug labs, that could affect EMTs' safety on the job. Mohler's most recent training in this area was in December of 1999, when the sheriff's office and the Wyoming Department of Criminal Investigation conducted a drug awareness and recognition course.

2. There is no evidence in the record that Defendant actually had a known drug history.

3. Trooper Davis testified that the search of Defendant's car was "incident to arrest," which suggests that Defendant may have been placed under arrest after the trooper discovered the controlled substances in Defendant's backpack. However, it is unclear from the record exactly when Defendant was placed under arrest.

two counts were dismissed as part of the plea bargain. Defendant timely filed his notice of appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Defendant argues that the trial court erred in denying his motion to suppress. While Defendant does not dispute the trial court's factual findings, he challenges the court's legal conclusions that (1) Mohler was not engaged in state action when he searched Defendant's backpack; and (2) the contraband found in Defendant's backpack would have been inevitably discovered by police officers. The State argues that the trial court could also have determined the search was lawful as a search incident to arrest. This court reviews the conclusions of law underlying a trial court's denial of a motion to suppress under a correctness standard, according no deference to the trial court's legal conclusions. *See State v. Anderson,* 910 P.2d 1229, 1232 (Utah 1996).

## ANALYSIS

I. Whether Mohler Was Engaged in State Action at the Time He Searched Defendant's Backpack

¶ 10 Defendant first argues that the trial court erred when it concluded that when Mohler searched Defendant's backpack, he "acted out of personal safety and for proper medical reasons," and therefore, was not engaged in state action for Fourth Amendment purposes. According to Defendant, Mohler's conduct constituted state action because he was a county employee who had received training in drug recognition from the Wyoming police and had been encouraged by police officers to inform them any time he found drugs while carrying out his duties as an EMT. In response, the State argues that Mohler was not engaged in state action because his examination of Defendant's backpack was motivated by reasons unrelated to law enforcement.

¶ 11 The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "the [F]ourth [A]mendment cannot be triggered simply because a person is acting on behalf of the government." *United States v. Attson,* 900 F.2d 1427, 1429 (9th Cir.1990). In order for the conduct of a non-law enforcement governmental party to be subject to the Fourth Amendment, " 'the governmental party engaging in that conduct must have acted with the intent to assist the government in its investigatory or administrative purposes *and not for an independent purpose.*' " *State v. Ellingsworth,* 966 P.2d 1220, 1223 (Utah Ct. App.1998) (emphasis added) (quoting *Attson,* 900 F.2d at 1433).

¶ 12 In this case, although Mohler ultimately assisted law enforcement, the trial court determined that when Mohler examined the contents of Defendant's backpack he was not acting " 'with the *intent* to assist the government in its investigatory or administrative purposes.' " *Id.* (emphasis added) (citation omitted). Mohler testified that he opened the prescription bottle in Defendant's backpack because he was concerned that Defendant had taken medication that he had not told Mohler about. Mohler further testified that he searched the remainder of Defendant's backpack because he had just discovered what he believed to be a controlled substance and was worried that there might be more drugs, or even weapons, in the backpack. Given his role as an EMT, Mohler's concerns about his personal safety and Defendant's medical treatment were reasonable. More importantly, such concerns clearly served a purpose independent of law enforcement.

¶ 13 In support of his argument that Mohler engaged in state action, Defendant argues that the Wyoming police provided Mohler with drug recognition training and encouraged him to inform them any time he came across drugs during the course of his duties. Defendant also maintains that Mohler's statement to the nurse at the scene of the accident that Defendant's backpack contained syringes demonstrates that Mohler was more concerned about law enforcement than medical treatment.

¶ 14 Under Utah law, "[t]he burden of establishing governmental involvement in a

private search rests upon the party objecting to the evidence." *State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988) (footnote omitted). As such, it appears that the facts cited by Defendant are insufficient to establish that Mohler's search of his backpack constituted state action. Mohler testified that his drug recognition training was for safety rather than law enforcement reasons, and he specifically denied that once he found the pill bottle in Defendant's backpack, his role changed from "ambulance driver to cop, investigator." Moreover, Mohler's statement to the nurse about the syringes in Defendant's backpack is too vague to be construed as evidence that Mohler was acting on behalf of law enforcement rather than conveying relevant medical information. Therefore, we conclude that the trial court did not err in determining that Mohler was not engaged in state action when he searched Defendant's backpack. Accordingly, Defendant's Fourth Amendment right to be free from unreasonable government searches was not implicated when Mohler examined the contents of his backpack.

II. Whether Trooper Davis's Examination of the Contents of Defendant's Backpack Violated the Fourth Amendment

¶ 15 The trial court concluded that although Trooper Davis's warrantless search of Defendant's backpack was not supported by an exception to the warrant requirement, it did not violate Defendant's rights under the Fourth Amendment because Trooper Davis had probable cause to arrest Defendant, and therefore, the contraband in the backpack would have been inevitably discovered by lawful means, either during a search incident to arrest or during a routine inventory search. Defendant argues that even if Trooper Davis had probable cause to arrest him, the State failed to establish that his arrest was inevitable. The State responds by arguing that although the trial court correctly relied on the inevitable discovery doctrine, this court could uphold the trial court's

ruling on the alternative ground that Trooper Davis's warrantless search of Defendant's backpack was a valid search incident to arrest.[4]

A. Whether Trooper Davis's Examination of Defendant's Backpack Was a Valid Search Incident to Arrest

¶ 16 "Warrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement." *State v. Brown*, 853 P.2d 851, 855 (Utah 1992). One such exception is "[a] contemporaneous ... search of the area within an arrestee's immediate control ... for the purpose of recovering weapons the arrestee might reach, or to prevent concealment or destruction of evidence of the crime." *State v. Harrison*, 805 P.2d 769, 784 (Utah Ct.App.1991) (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Accordingly, "[a]n arresting officer may, without a warrant, lawfully search the area surrounding the person he or she is arresting if: (1) the arrest is lawful, (2) the search is of the area within the arrestee's immediate control, and (3) the search is conducted contemporaneously to the arrest[.]" *State v. Gallegos*, 967 P.2d 973, 978 (Utah Ct.App.1998) (second alteration in original) (quotations and citations omitted). In this case, we conclude that the search of Defendant's backpack was not a valid search incident to arrest because the search did not take place in an area within Defendant's immediate control, and was not conducted contemporaneously to his arrest.

¶ 17 In determining whether an area searched is within an arrestee's immediate control, Utah courts have focused on the following factors:

(1) "whether or not the arrestee was placed in some form of restraints"; (2) "the position of the officer vis-a-vis the defendant in relation to the place searched"; (3) "the ease or difficulty of gaining access" to the searched area or

4. Defendant maintains that this court should not consider the State's argument that Trooper Davis's examination of Defendant's backpack was a search incident to arrest because this argument was not presented to the trial court. However, " '[i]t is well settled that we may affirm a judgment of a lower court if it is sustainable on any legal ground or theory apparent on the record.' " *State v. Comer*, 2002 UT App 219,¶ 21 n. 8, 51 P.3d 55 (citation omitted).

item; and (4) "the number of officers present in relation to the number of arrestees or other persons."

*State v. Wells*, 928 P.2d 386, 391 (Utah Ct. App.1996) (footnote omitted) (quoting Wayne R. LaFave, *Search and Seizure* § 6.3(c), at 306–07 (3d ed. 1996)). In *Wells*, after the defendant had been handcuffed and arrested, police officers searched his jacket—which was lying on his bed—based on a statement by his girlfriend that the jacket's liner contained cocaine. *See id.* at 387–88. In rejecting the State's argument that the warrantless search was justified as being incident to arrest, the court concluded that "the search had none of the typical characteristics of looking for weapons or contraband within the control of an arrestee." *Id.* at 391. The court further noted that "[t]he search was clearly conducted because appellant's girlfriend indicated where the cocaine could be found and not because the officers were checking the immediate area incident to [the] defendant's arrest." *Id.* (footnote omitted).

¶ 18 Applying the four factor *Wells* analysis to this case, the State has failed to meet its burden of demonstrating that Defendant's backpack was within his immediate control at the time it was searched. Defendant was immobilized on a gurney in the back of an ambulance when Trooper Davis searched his backpack. The backpack was several feet from Defendant and, more significantly, was outside the ambulance when the search occurred. Given that Defendant was in the ambulance strapped to a gurney, it would have been impossible for him to retrieve the backpack or any of its contents. Finally, at least three police officers were present when the backpack was searched, and there is no evidence that there was anyone in the vicinity who could have tampered with or concealed the backpack's contents. Like *Wells*, it appears that "[t]he search was clearly conducted because [the Wyoming police officer] indicated where the [contraband] could be

found and not because the officer[ ] w[as] checking the immediate area incident to [D]efendant's arrest." *Id.* (footnote omitted). Therefore, we conclude that the search of Defendant's backpack did not occur in an "area within [his] immediate control." *Gallegos,* 967 P.2d at 978.

¶ 19 Furthermore, the State has failed to meet its burden of proving that the search of Defendant's backpack was "conducted contemporaneously to the arrest[.]" *Id.* (alteration in original). While a search may precede a formal arrest, the search and the arrest must be "substantially contemporaneous" and probable cause to effect the arrest must exist "independent of the evidence seized in the search." *State v. Banks,* 720 P.2d 1380, 1384 (Utah 1986); *see also Smith v. Ohio,* 494 U.S. 541, 543, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (noting that " '[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification' " (alteration in original) (citation omitted)). Here, it is not apparent from the record how soon after Trooper Davis's search of the backpack Defendant's arrest occurred. However, even if Defendant was arrested immediately after the search, it is clear that probable cause to effect the arrest did not exist "independent of the evidence seized in the search." *Banks,* 720 P.2d at 1384. Therefore, the search of Defendant's backpack did not take place contemporaneous to his arrest. Accordingly, the search cannot be upheld as a valid search incident to arrest.[5]

## B. Whether the Contraband in Defendant's Backpack Would Have Been Inevitably Discovered by Lawful Means

¶ 20 The trial court concluded that no violation of Defendant's Fourth Amendment rights occurred because there was probable cause to arrest Defendant, and therefore, the contraband in his backpack would have been inevitably discovered by

---

5. Because we conclude that the search was not incident to arrest on the basis that it did not take place in an area within Defendant's immediate control and was not conducted contemporaneously to his arrest, it is unnecessary for us to consider whether Defendant's arrest was supported by probable cause. However, we note

that although there may have been probable cause to support a search of Defendant's backpack based on the information provided by Mohler, it is highly questionable whether this information alone would have provided probable cause to support an arrest.

lawful means, either during a search incident to arrest or during a routine inventory search. Defendant argues that the trial court's reliance on the inevitable discovery doctrine is misplaced because there was no probable cause to arrest him, and even if there was, no evidence was presented during the suppression hearing that Trooper Davis would have arrested Defendant based solely on the information provided by Mohler.

¶ 21 The inevitable discovery doctrine provides for the admission of evidence otherwise inadmissible under the exclusionary rule, " '[i]f the prosecution can establish by a preponderance of the evidence that the [evidence] ultimately or inevitably would have been discovered by lawful means.' " *State v. Topanotes*, 2003 UT 30, ¶ 14, 76 P.3d 1159 (citation omitted). As noted earlier, it is questionable whether Trooper Davis would have had probable cause to effectuate an arrest based solely on the information provided by Mohler. However, even assuming that probable cause to arrest existed, we are unpersuaded that an arrest would automatically have occurred or that the contraband would have been inevitably discovered by lawful means.

¶ 22 "For courts confidently to predict what would have occurred, but did not actually occur, there must be persuasive evidence of events or circumstances apart from those resulting in illegal police activity that would have inevitably led to discovery." *Id.* at ¶ 16. No evidence was offered during the suppression hearing that at any time prior to the search of the backpack, Trooper Davis would have arrested Defendant based solely on the information provided by Mohler. Indeed, it is clear from Trooper Davis's actions that he wanted corroboration that the backpack contained drugs before he arrested Defendant. Whether Trooper Davis would actually have arrested Defendant without that corroboration is too speculative to justify application of the inevitable discovery doctrine. Otherwise, there would be nothing " 'to prevent the inevitable discovery exception from swallowing the exclusionary rule.' " *Id.* at ¶ 19 (citation omitted). Therefore, we hold that the contraband discovered in Defen-

dant's backpack is not admissible under the inevitable discovery doctrine.

## CONCLUSION

¶ 23 Mohler's examination of Defendant's backpack was not conducted with the purpose of assisting law enforcement. Rather it was conducted to obtain relevant medical information and out of a concern for Mohler's personal safety. Therefore, Mohler was not engaged in state action for Fourth Amendment purposes when he examined the contents of Defendant's backpack.

¶ 24 However, the evidence seized from Defendant's backpack is inadmissible because it was not obtained pursuant to a recognized exception to the warrant requirement. The search of the backpack was not a valid search incident to arrest because the search did not take place in an area within Defendant's immediate control, and was not conducted contemporaneously to his arrest. Moreover, admission of the seized evidence cannot be justified by the inevitable discovery doctrine because Defendant's arrest without the prior search is only speculative. Therefore, the denial of Defendant's motion to suppress is reversed. We remand the case to the trial court for proceedings consistent with this opinion.

¶ 25 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and JAMES Z. DAVIS, Judge.