1999 UT App 104

**STATE of Utah, In the Interest of M.V., a person under eighteen years of age.**

**M.V., Appellant,**

v.

**State of Utah, Appellee.**

**No. 981177–CA.**

Court of Appeals of Utah.

April 1, 1999.

Sharon Fields, Salt Lake City, for Appellant.

Jan Graham, Barnard N. Madsen, and Kenneth Bronston, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant M.V. entered a conditional guilty plea for possession of a dangerous weapon by a restricted person. On appeal, M.V. challenges the juvenile court's denial of his motion to suppress evidence and his consequent adjudication. We affirm.

## BACKGROUND

¶ 2 While on routine patrol, a West Jordan police officer observed M.V. and another male juvenile walking together in a high crime area at approximately 11:30 a.m. on a school day. Because it was during school hours, the officer believed the boys were truants. When he slowed to turn his vehicle around to make contact with the juveniles, the officer watched the boys turn and head away from him. As the officer pulled closer to the juveniles, M.V.'s companion took off running. The officer then pulled up next to M.V. and stopped him.

¶ 3 When stopped, M.V. had his hands in the pockets of his baggy clothing. Because the officer was unsure of what M.V. had with him, he asked M.V. to take his hands out of his pockets. The officer then conducted a pat-down search for weapons. During the pat-down, the officer found a pack of cigarettes in the front pocket of M.V.'s pants. When the officer asked if he had anything else, M.V. replied that he had a knife. The officer located a knife with a six-inch blade, which M.V. had concealed under his shirt and tucked into the front of his pants.

¶ 4 When the officer asked M.V. where he should be at this time of day, M.V. replied that he was on his way to catch a bus to get to school. The officer asked what school he attended, and M.V. stated that he attended Central High School in Salt Lake City. The officer then asked where he lived, and M.V. said he lived in West Valley City. Somewhat puzzled by these responses, the officer asked M.V. why he had traveled from West Valley to West Jordan to catch the bus to his school in Salt Lake. M.V. replied that he actually left home the night before because his mother was upset with him for having shaved his head.

¶ 5 Based on M.V.'s answers to these questions, the officer called dispatch to verify M.V.'s name and status, and learned of a juvenile court pick-up order on M.V. Upon receiving this information, the officer took M.V. into custody and transported him to the Youth Detention Center.

¶ 6 A petition was filed in juvenile court alleging that, as a probationer, M.V. was a restricted person in possession of a concealed dangerous weapon. The petition also alleged that M.V. unlawfully possessed cigarettes. Prior to adjudication of the petition, M.V. filed a Motion to Suppress the knife as evidence. After a hearing, the juvenile court denied the motion. M.V. then entered a conditional guilty plea to possession of a dangerous weapon by a restricted person, and the court sua sponte dismissed the possession of cigarettes allegation. The juvenile court then ordered M.V. into the temporary custody of the State Division of Youth Cor-

rections Observation and Assessment unit for a period not to exceed ninety days. M.V. now appeals the juvenile court's denial of his motion to suppress the knife as evidence.

## ISSUES AND STANDARD OF REVIEW

¶ 7 M.V. appeals on two grounds: (1) the officer did not have a reasonable suspicion to stop M.V., based on his age and the time of day; and (2) the officer's safety concerns did not justify the pat-down search. "[W]hether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness ... [with] a measure of discretion to the trial judge when applying that standard to a given set of facts." *State v. Pena*, 869 P.2d 932, 939 (Utah 1994).

## ANALYSIS

¶ 8 M.V. argues that the officer did not have reasonable suspicion of criminal activity to justify the investigatory stop because truancy is not a "crime." However, section 53A–11–105 of the Utah Code provides that "[a] peace officer ... may take a person into temporary custody if there is reason to believe the person is a child subject to the state's compulsory education law and that the child is absent from school without a legitimate or valid excuse." Utah Code Ann. § 53A–11–105(1) (Supp.1998). In this case, the officer had reason to believe M.V. was unlawfully truant based on M.V.'s apparent age [1] and the time of day. Therefore, the initial stop was justified to permit the officer to investigate whether M.V. met the criteria for temporary custody under section 53A–11–105(1).

¶ 9 M.V. argues next that the pat-down search exceeded the scope of the initial truancy stop and it was unsupported by reasonable suspicion. M.V. asserts that the officer lacked reasonable suspicion to believe that M.V. was armed or dangerous to justify a frisk for weapons.

¶ 10 In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. at 1884–85. M.V. asserts that under *Terry*, the officer did not observe any conduct that indicated serious criminal activity or present danger. Additionally, M.V. argues that the officer conducted the pat-down before he made any inquiries to dispel his safety concerns.

¶ 11 The State conceded in oral argument before this court that it is a close call as to whether a *Terry* frisk is justified under these circumstances. The State urges, however, that the case is easily affirmed under the inevitable discovery doctrine. We agree. *See Gardner v. Madsen*, 949 P.2d 785, 789 n. 2 (Utah Ct.App.1997) ("This court may affirm the trial court on any proper ground, even though not relied upon below.").[2]

¶ 12 The inevitable discovery doctrine is an exception to the exclusionary rule, and provides that evidence need not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). "Under this rule, the prosecution must show that the evidence 'would' have been discovered, not

---

1. M.V. does not challenge the finding that he was a juvenile, and that he appeared to be a juvenile at the time of the stop. M.V. was fifteen years old when this incident occurred.

2. Although the prosecutor raised inevitable discovery below, the trial court did not base its decision on that doctrine.

simply that it 'could' or 'might' have been discovered." *State v. Genovesi*, 909 P.2d 916, 923 n. 8 (Utah Ct.App.1995). In *State v. James*, 361 Utah Adv. Rep. 49, 977 P.2d 489 (Utah Ct.App.1999), this court determined that an inevitable independent investigation helped insure "that the evidence is absolved of the taint" of any illegal police conduct. *Id.* at 51, 977 P.2d 493; *see also United States v. Larsen*, 127 F.3d 984, 986 (10th Cir.1997) (stating "the inevitable discovery exception applies whenever an independent investigation inevitably would have led to discovery of the evidence") *cert. denied*, — U.S. —, 118 S.Ct. 1105, 140 L.Ed.2d 159 (1998).

 ¶ 13 In this appeal, the State has established that the knife inevitably would have been discovered in a separate independent investigation. After confirming M.V. was truant and learning of the outstanding juvenile court pick-up order, the officer took M.V. into custody and transported him to youth detention. Upon his arrival at youth detention, M.V. would routinely be searched in accordance with the administrative rules. *See* Utah Admin. Code R547–2–18(8)(d) (Supp.1997) (requiring that, upon admission to detention, "[a] strip search of the youth shall be performed to assure against the introduction of weapons or contraband"). This mandatory search upon admission to youth detention constitutes a separate independent investigation that inevitably would have led to the discovery of the knife hidden in M.V.'s pants. Consequently, we agree with the State's argument and conclude that the inevitable discovery rule applies. The State has met its burden of showing that the knife ultimately would have been discovered by lawful means. *See Nix*, 467 U.S. at 444, 104 S.Ct. at 2509. Therefore, we will not disturb the juvenile court's decision permitting the knife to be introduced as evidence.

## CONCLUSION

¶ 14 Based on the foregoing, we conclude that the juvenile court correctly determined that the investigatory stop of M.V. was justified. Furthermore, we accept the State's inevitable discovery argument, and conclude that the knife ultimately would have been discovered when M.V. was searched upon admission to youth detention.

¶ 15 We therefore affirm the juvenile court's denial of the Motion to Suppress and the resulting adjudication.

¶ 16 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge.