**2025 UT App 101**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
HECTOR ABONZA,
Appellee.

Opinion
No. 20241002-CA
Filed July 3, 2025

Seventh District Court, Price Department
The Honorable Don M. Torgerson
No. 241700067

Tristan L. Thomas and Christian B. Bryner,
Attorneys for Appellant

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

ORME, Judge:

¶1      Hector Abonza filed a motion to suppress evidence of an interaction with police that led to his arrest for, among other things, public intoxication. Concluding that the police did not have probable cause to arrest him, the district court granted the motion to suppress and dismissed the charges against Abonza. The State appeals, arguing that because Abonza's intoxication would have become apparent soon after the arrest anyway, the evidence should have been admitted under the inevitable discovery exception to the exclusionary rule. We disagree and affirm.

BACKGROUND

¶2      Observing a car that failed to properly signal, police initiated a traffic stop. An officer (Officer) who approached the car could smell "the strong odor of an alcoholic beverage coming from the vehicle." The driver was promptly arrested for DUI. The passenger, Hector Abonza, remained in the car and spoke with Officer. Officer later averred that Abonza had "watery glassy eyes and his speech was extremely slurred." Officer's body camera footage shows Abonza tell Officer he would "walk down the street," but he did not provide the address of his destination. He also refused to give Officer his ID.

¶3      Over the course of about two minutes, Officer attempted to coax Abonza out of the car, but Abonza remained in the passenger seat and asked Officer through the slightly open car window, "Am I detained?" When Officer said, "Yes," Abonza asked, "For what?" Officer answered, "Public intoxication." Officer told Abonza, "I feel you pose a danger to yourself at this point." During this exchange, Abonza called someone on his cell phone, telling them, "They're trying to arrest me." After another officer unlocked the driver side door of the car, Abonza eventually opened the passenger door. As he stepped out of the car, he stumbled, and Officer immediately turned him around and placed him in handcuffs. Abonza yelled at police as they led him away, asking why he was being arrested, and he initially resisted attempts to put him in a police car.

¶4      Abonza was charged with public intoxication, failure to disclose his identity, and interference with an arresting officer.[1] Abonza moved to suppress evidence of his intoxication, arguing that Officer did not have a reasonable suspicion to detain him or

---

1. Abonza was also charged with possession of a dangerous weapon by a restricted person based on knives discovered in the car, but he was not bound over on this charge.

probable cause to arrest him. At the preliminary hearing, Abonza was bound over on these charges. The district court also addressed the pending suppression motion, scheduled another hearing, and allowed the parties to further brief the issue.

¶5 Abonza submitted a memorandum in support of his motion to suppress, arguing there was not a reasonable likelihood of his harming himself or others—an element of public intoxication, *see* Utah Code Ann. § 76-9-701(1) (LexisNexis Supp. 2024)[2]—and, thus, there was no probable cause to arrest him. The State responded, arguing there was probable cause at the time of Abonza's arrest and, regardless, probable cause would have arisen as soon as Abonza exited the car. The State thus argued that evidence of Abonza's intoxication was admissible under the inevitable discovery exception to the exclusionary rule.[3]

¶6 At the hearing on the suppression motion, the State argued much the same thing, pointing to Abonza's insistence on walking away from the scene "combined with obvious signs of intoxication, the smell from the car," and "the slurring of the

---

2. We cite the current version of the statute, as it does not differ from the version in effect at the time of Abonza's arrest.

3. As we explain more fully in our analysis, the "inevitable discovery doctrine admits unlawfully obtained evidence if the police would have, in spite of the illegality, discovered the evidence by some other legal means." *State v. Tripp*, 2010 UT 9, ¶ 56, 227 P.3d 1251. The prototypical example is when contraband is seized illegally under circumstances when it would have later been discovered anyway. *See, e.g., In re M.V.*, 1999 UT App 104, ¶ 13, 977 P.2d 494 (concluding that a knife found on a teenager during an illegal pat-down search would have inevitably been discovered when the teenager was transported to a juvenile detention center pursuant to an already existing court pick-up order).

speech" as providing probable cause to arrest him. The State also argued that the inevitable discovery doctrine should apply to this evidence "because it was clear that nothing good was going to come out of Mr. Abonza leaving the vehicle."

¶7　The court expressed concern about "the timing of it all" and stated that Abonza was arrested before he did "anything that really shows that he's [a] danger to himself." And the court stated that it was "not sure how" the inevitable discovery exception would apply in this case. Ultimately, emphasizing that this was "a super close call," the court stated, "Letting someone go from the scene might be a liability issue, but it doesn't necessarily translate that that is a basis to determine that they're in violation of the public intoxication statute." The court noted that it was "slightly uncomfortable" granting the suppression motion because Abonza's intoxication would have been apparent "as soon as he got out of the car, if he'd have wandered off." But because police "hadn't yet been able to form probable cause for the arrest when they arrested" Abonza, the court granted the motion and dismissed the charges.[4]

ISSUE AND STANDARD OF REVIEW

¶8　On appeal, the State argues the district court should have denied Abonza's suppression motion. In particular, the State argues the court should have concluded that evidence of Abonza's intoxication would have been inevitably discovered. "We review a trial court's factual findings underlying a decision to grant or deny a motion to suppress evidence for clear error. However, we review the trial court's conclusions of law based on such facts under a correctness standard, according no deference

---

4. The court dismissed the charges on its own initiative, perceiving that the State would be unable to proceed with its case without this pivotal evidence.

to the trial court's legal conclusions." *State v. Mitchell*, 2013 UT App 289, ¶ 19, 318 P.3d 238 (quotation simplified).


ANALYSIS

¶9      The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Courts have breathed life into the Fourth Amendment's protections by developing the exclusionary rule, which generally requires suppression of evidence obtained in violation of constitutional protections." *Brierly v. Layton City*, 2016 UT 46, ¶ 20, 390 P.3d 269. In other words, "the exclusionary rule prohibits the use at trial of evidence, both primary and derivative (the 'fruit of unlawful police conduct'), obtained in violation of an individual's constitutional and statutory rights." *State v. Topanotes*, 2003 UT 30, ¶ 13, 76 P.3d 1159 (quotation simplified). But "the harsh consequences of this rule—excluding relevant evidence of illegal activity at trial—are tempered somewhat by the exceptions to the exclusionary rule." *Id.*

¶10     One such exception is the inevitable discovery exception adopted by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431 (1984). There, a defendant agreed to lead police to the body of his child victim after an officer asked him to do so to facilitate "a Christian burial" for the child. *Id.* at 435. At the same time, a search party was scouring a swathe of farmland to find the body. *Id.* The search was called off once it became clear that the defendant was cooperating with police, but the body was "essentially within the area to be searched." *Id.* at 436. The Supreme Court held that any constitutional violation by the officers in making emotional appeals to the defendant was excused by the fact that "the search parties were approaching the actual location of the body" and "the body inevitably would have been found" had the defendant "not earlier led the police to" it. *Id.* at 449–50.

¶11    In discussing its application of the inevitable discovery exception, the Supreme Court recognized that its own rationale "for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections." *Id.* at 442–43. But, the Court stated, "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received" and "[a]nything less would reject logic, experience, and common sense." *Id.* at 444.

¶12    Here, the State concedes that at the time of Abonza's arrest, there may not have been probable cause to arrest him for public intoxication. But the State argues that probable cause would have materialized as soon as Abonza stepped out of the car and walked away from the scene, as he told Officer he intended to do. Thus, the State argues the inevitable discovery rule should apply, excusing the illegality of the arrest and shielding the evidence of Abonza's interaction with police from suppression. This argument confuses *inevitable* discovery with *potential* discovery. It also confuses evidence of a crime having *been committed* with a crime likely to be committed *in the future*.

¶13    Since *Nix*, Utah courts have had many occasions to apply the inevitable-discovery exception. These cases illustrate that the exception "permits the admission of evidence that would have inevitably been lawfully discovered notwithstanding its *actual discovery* as the result of an unconstitutional search or seizure." *Brierly*, 2016 UT 46, ¶ 20 (emphasis added). *See, e.g., id.* ¶¶ 19–40; *State v. Tripp*, 2010 UT 9, ¶¶ 56–59, 227 P.3d 1251; *State v. Worwood*, 2007 UT 47, ¶¶ 43, 49, 164 P.3d 397; *Topanotes*, 2003 UT 30, ¶¶ 13-21; *State v. Mitchell*, 2013 UT App 289, ¶¶ 20–24, 318 P.3d 238; *State v. Amirkhizi*, 2004 UT App 324, ¶¶ 21–22, 100 P.3d 225; *In re M.V.*, 1999 UT App 104, ¶¶ 12–13, 977 P.2d 494.

¶14 The State does not challenge on appeal the district court's determination that there was no probable cause to arrest Abonza because there was no evidence at the time of arrest that, although intoxicated, he posed a danger to himself or others. *See* Utah Code Ann. § 76-9-701(1) (LexisNexis Supp. 2024) ("A person is guilty of intoxication if the person is under the influence of alcohol, a controlled substance, or any substance having the property of releasing toxic vapors, *to a degree that the person may endanger the person or another*, in a public place[.]") (emphasis added). *See also Due South, Inc. v. Department of Alcoholic Beverage Control*, 2008 UT 71, ¶ 31, 197 P.3d 82 ("In order to satisfy the may endanger element of the public intoxication statute, an officer must be able to articulate objective facts indicating a reasonable likelihood of endangerment based on the particular circumstances."). Thus, at the time of Abonza's arrest, just before he exited the car, there was no evidence of a key element of the public intoxication offense— only the potential that the element might soon spring into existence. And the State did not prove by a preponderance that evidence that did not exist at the time of his arrest would inevitably have been discovered.[5] Accordingly, the district court

---

5. As explored at some length during oral argument, a number of scenarios could have unfolded once Abonza exited the car. He might have walked off safely on the shoulder, parallel to and away from the roadway. Or he might have decided instead to sit down on the side of the road to sober up or to call someone to pick him up. Indeed, he had already made one call while talking to Officer. Of course, other scenarios were well within the realm of possibility, including that he might set off down the road, stumbling and falling, and perhaps doing so in a lane of traffic. The problem is that jumping the gun and arresting Abonza before any of these scenarios unfolded was a matter of speculation— rather than of inevitability—about whether Abonza, even though intoxicated, would present a danger to himself or others upon exiting the car.

correctly concluded that the inevitable discovery exception was inapplicable.[6]

## CONCLUSION

¶15    The inevitable discovery exception does not apply where the discovery is merely possible. We thus affirm the district court's grant of Abonza's motion to suppress and its dismissal of the charges against him.

————————

6. Abonza faults the State for not specifically addressing prejudice in its briefing. *See State v. Cruz*, 2016 UT App 234, ¶ 52, 387 P.3d 618 ("The appellant must demonstrate prejudice or harm to prevail.") (quotation simplified). But—as the State noted during oral argument—the prejudicial ramifications of suppressing the evidence and dismissing its case are obvious. In any event, based on our resolution of this appeal, we need not reach the prejudice issue.